[960 NE2d 383, 936 NYS2d 614]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SEBASTIAN DELAMOTA, Appellant.

Argued October 11, 2011; decided November 17, 2011

## POINTS OF COUNSEL

*Appellate Advocates*, New York City (*Andrew E. Abraham* and *Lynn W.L. Fahey* of counsel), for appellant. I. In this one-witness identification case, a reasonable doubt exists, as a matter of law, as to whether appellant, a six feet, three inch, 170 pound, 19 year old with an injured and useless arm, was the robber the complainant initially described as a five feet, six inch, 140 pound man in his mid-20s, who was able to use both arms fully during the crime, especially since the original report to police was that the complainant did not see the robber's face or know whether he was black or white, and virtually every aspect of the complainant's testimony as to critical facts was contradicted by other evidence. (*People v Reed*, 40 NY2d 204; *People v Santos*, 38 NY2d 173; *People v Ledwon*, 153 NY 10; *People v Calabria*, 3 NY3d 80; *Jackson v Virginia*, 443 US 307; *People v Foster*, 64 NY2d 1144; *People v Stewart*, 40 NY2d 692; *People v Logue*, 35 NY2d 658; *People v Sickles*, 35 NY2d 792; *People v Abelson*, 309 NY 643.) II. Suppression of the complainant's pretrial identification was required when the police allowed his son—who was appellant's age, was from the same neighborhood, and had given the police appellant's name—to act as his father's Spanish interpreter at the photo array, and when the son admitted at trial that he had known appellant a long time. (*United States v Wade*, 388 US 218; *People v Rodriguez*, 79 NY2d 445; *People v Chipp*, 75 NY2d 327; *People v Gonzalez*, 145 AD2d 923; *People v Jones*, 108 AD2d 824; *People v Mosley*, 110 AD2d 937; *People v Gaddy*, 98 AD2d 729; *People v Burts*, 78 NY2d 20; *People v Young*, 35 AD3d 324; *People v Truesdale*, 299 AD2d 289.) III. Appellant was denied the effective assistance of counsel by his attorney's failure to (a) protest inadmissible hearsay that appellant's close friend "knew" appellant committed the crime, (b) appropriately object to an improper *Dawson* inquiry of a key defense witness, or (c) protect appellant from evidence that suggested appellant had a generally bad character and unsavory friends. (*Strickland v Washington*, 466 US 668; *People v Baldi*, 54 NY2d 137; *People v Benevento*, 91 NY2d 708; *People v Bennett*, 29 NY2d 462; *Somerville v Conway*, 281 F Supp 2d 515; *Murray v Carrier*, 477 US 478; *People v Caban*, 5 NY3d 143; *People v Henry*, 95 NY2d 563; *People v Flores*, 84 NY2d 184; *People v Huertas*, 75 NY2d 487.)

*Richard A. Brown, District Attorney*, Kew Gardens (*Daniel Bresnahan* and *John M. Castellano* of counsel), for respondent. I. The evidence was legally sufficient to prove defendant's guilt beyond a reasonable doubt. (*People v Calabria*, 3 NY3d 80; *People v Jackson*, 65 NY2d 265; *People v Bleakley*, 69 NY2d 490; *People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Ford*, 66 NY2d 428; *People v Arroyo*, 54 NY2d 567; *People v Foster*, 64 NY2d 1144; *People v Reed*, 40 NY2d 204; *People v Ledwon*, 153 NY 10.) II. The hearing court properly denied defendant's motion to suppress the identification evidence, and the trial court properly declined to disturb the hearing court's decision. (*United States v Wade*, 388 US 218; *People v Collins*, 60 NY2d 214; *People v McBride*, 14 NY3d 440; *People v Chipp*, 75 NY2d 327; *People v Adams*, 53 NY2d 241; *People v Marte*, 12 NY3d 583; *People v Ortiz*, 90 NY2d 533; *People v Prochilo*, 41 NY2d 759; *People v Lee*, 96 NY2d 157; *People v Jackson*, 98 NY2d 555.) III. Defendant received the effective assistance of counsel at trial. (*People v Benevento*, 91 NY2d 708; *People v Baldi*, 54 NY2d 137; *People v Baker*, 14 NY3d 266; *People v Satterfield*, 66 NY2d 796; *People v Borrell*, 12 NY3d 365; *People v Turner*, 5 NY3d 476; *People v Henry*, 95 NY2d 563; *People v Flores*, 84 NY2d 184; *People v Caban*, 5 NY3d 143; *Strickland v Washington*, 466 US 668.)

## OPINION OF THE COURT

GRAFFEO, J.

Over a century ago, *People v Ledwon* (153 NY 10 [1897]) established that a criminal conviction is not supported by legally sufficient evidence if the only evidence of guilt is supplied by a witness who offers inherently contradictory testimony about the defendant's culpability. The victim in this case consistently told the jury that defendant was the person who robbed him but his testimony conflicted with the testimony of other witnesses. We hold that the limited rule of *Ledwon* does not govern on these facts and the proof at trial was sufficient to support defendant's conviction despite the evidentiary discrepancies. Nevertheless, an unduly suggestive pretrial identification procedure entitles defendant to a new trial preceded by an independent source hearing.

I

On an evening in October 2006, Juan Hernandez was robbed at knife point in an elevator at his apartment building. Shortly after the incident, his son, Juan Jr., telephoned 911 and

pretended to be his father. Juan Jr. gave the 911 operator a general description of the robber but some of his statements were not accurate because he had received little information from his father.

As a result of the 911 call, later that night Detective Bruce Koch spoke to Hernandez and his son. Juan Jr. translated for his father during the conversation. According to Detective Koch, Hernandez described the robber as a Hispanic man in his mid-20s who weighed approximately 140 pounds and was about the detective's height—five feet, six inches. Hernandez also allegedly stated that the perpetrator held the knife in his right hand and took the stolen items with his left hand. The detective assembled various photographs of individuals from a police department database that matched this general description but Hernandez was not able to make an identification. Defendant Sebastian Delamota—who at the time of the robbery was 18 years old, six feet, three inches tall and had a functionally impaired left arm as a result of a previous gunshot injury—was not among the persons in the photographs shown to Hernandez.

Hernandez and his son met again with Detective Koch a few days after the robbery. Juan Jr. told the detective that, based on neighborhood gossip, he had been told that the perpetrator of his father's robbery was "Sebastian" and that this individual had been shot earlier that year on Elmhurst Avenue. Detective Koch asked Juan Jr. if he knew Sebastian and he responded in the negative. After searching the police database, Detective Koch learned that defendant had been shot on Elmhurst Avenue in April 2006. The detective located defendant's photo, assembled an array and showed it to Hernandez. With Juan Jr. translating, Hernandez chose defendant's photograph as depicting the man who robbed him. Defendant was subsequently apprehended, placed in a lineup and identified by Hernandez, this time with a Spanish-speaking detective serving as the interpreter.

Defendant was indicted for first-degree robbery, third- and fourth-degree weapon possession and second-degree menacing. Defense counsel moved to suppress the identifications by Hernandez, arguing that Juan Jr.'s presence during the photo array caused the procedure to be unduly suggestive since there was a possibility that Juan Jr. knew defendant from the neighborhood before the array was conducted. The People responded that the identification could not have been suggestive because Juan Jr.

told Detective Koch that he did not know defendant. Supreme Court determined that although it was "not the best practice" to use Juan Jr. as an interpreter for his father, there was no basis for suppression because the son "did not know Mr. Delamota from the neighborhood, did not know who Mr. Delamota was" during the photo array and, hence, the lineup was similarly untainted.

At the jury trial, Detective Koch testified about his recollection of Hernandez's description of the robber, including Hernandez's statement that the perpetrator held a knife in his right hand and used his left hand to take certain articles of property. When Hernandez testified, he recalled that the robber had been unable to raise his left arm above his waist. Hernandez claimed that Detective Koch's recollection was mistaken and denied that he ever told the police that the robber had used both arms during the commission of the crime. Hernandez also provided various explanations for other inconsistencies in the proof, such as the perpetrator's height and age and how much cash was stolen. In addition, the parties stipulated that Hernandez told a therapist the day after the robbery that he was mugged "by a man he recognized as visiting his apartment complex on various occasions," which statement conflicted with Detective Koch's testimony that Hernandez said he was not familiar with the attacker.

When Juan Jr. took the stand, he admitted that he had known defendant for "[a] long time" prior to the robbery and had been present when defendant was placed into an ambulance after being shot in April 2006. After this revelation, defense counsel moved to reopen the *Wade* hearing. Eventually, Supreme Court denied defendant's motion, concluding that the suppression court would have reached the same result even if it had been aware that Juan Jr.—who acted as his father's translator during the photo array procedure—had a preexisting familiarity with defendant.

At the conclusion of the People's case and again at the close of all proof, defense counsel requested dismissal of the charges on the basis of insufficient evidence allegedly stemming from numerous discrepancies in the testimony of the witnesses. Supreme Court denied the motions and the jury found defendant guilty of first-degree robbery, third-degree weapon possession and second-degree menacing. Defendant was sentenced to 10 years in prison and five years of postrelease supervision.

The Appellate Division affirmed (74 AD3d 1225 [2d Dept 2010]), holding that Supreme Court did not improvidently exercise its discretion when it denied defendant's motion to reopen the suppression hearing. The court further determined that the evidence was legally sufficient to establish defendant's identity as the perpetrator of the robbery, the conviction was not against the weight of the evidence, Hernandez's testimony was not incredible as a matter of law and defendant's remaining contentions were meritless or unpreserved. A Judge of this Court granted defendant leave to appeal (15 NY3d 920 [2010]) and we now reverse.

## II

Defendant contends that the People's proof was legally insufficient to establish his guilt beyond a reasonable doubt. Relying on *People v Ledwon* (153 NY 10 [1897]) and its progeny, defendant asserts that there was no reasonable basis for the jury to convict him because there was contradictory testimony regarding the perpetrator's appearance. The People argue that *Ledwon* does not control here because the victim consistently testified at trial that defendant was the robber and any discrepancies with pretrial statements fell within the province of the jury to make credibility determinations that are unreviewable in the context of a sufficiency challenge.

A verdict is legally sufficient if there is any valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt (*see e.g. People v Smith*, 6 NY3d 827, 828 [2006], *cert denied* 548 US 905 [2006], quoting *People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Santi*, 3 NY3d 234, 246 [2004]). The proof must be viewed in the light most favorable to the prosecution and the People are entitled to all reasonable evidentiary inferences (*see e.g. People v Conway*, 6 NY3d 869, 872 [2006]; *People v Ford*, 66 NY2d 428, 437 [1985]). In turn, the reviewing court is required "to marshal competent facts . . . and determine whether, as a matter of law, a jury could logically conclude that the People sustained [their] burden of proof" (*People v Danielson*, 9 NY3d 342, 349 [2007]). Under this standard, a court could theoretically uphold a conviction that was premised on inherently contradictory testimony by a single witness because the jury could have accepted the testimony that supported the People and rejected that which did not.

Our Court recognized that such an outcome is unjust long before the modern formulation of the standard for sufficiency review was articulated (*see e.g. Jackson v Virginia*, 443 US 307, 316 [1979]; *In re Winship*, 397 US 358, 364 [1970]). In *People v Ledwon* (153 NY 10 [1897]), we reversed a murder conviction that was based on the conflicting trial testimony of the 12-year-old eyewitness who stated that: (1) he saw the victim commit suicide; (2) he observed the defendants kill the victim; and, lastly, (3) that he witnessed the victim commit suicide. We reasoned that the " 'hopeless contradictions' " in the boy's testimony could not establish guilt beyond a reasonable doubt (*id.* at 22; *see also People v Calabria*, 3 NY3d 80, 82 [2004]).

Beginning in the 1970s, we emphasized that *Ledwon* applies in rare cases where the charged crime is established by only one witness who provides inherently contradictory testimony at trial (*see e.g. People v Reed*, 40 NY2d 204, 208-209 [1976]; *People v Stewart*, 40 NY2d 692, 699 [1976]; *People v Jackson*, 65 NY2d 265, 272 [1985] [the rule covers instances where "all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence"]). In such an instance, the witness is deemed to be "incredible or unreliable as a matter of law" (*People v Calabria*, 3 NY3d at 82) and the conviction must be vacated because "the jury is left without [any] basis, other than impermissible speculation, for its determination of" guilt (*People v Jackson*, 65 NY2d at 272). We also restricted the breadth of the *Ledwon* one-witness rule, indicating that it does not control if the sole witness provides a credible explanation for the discrepant testimony (*see People v De Tore*, 34 NY2d 199, 207 [1974], *cert denied sub nom. Wedra v New York*, 419 US 1025 [1974]).[1] Similarly, where a witness makes pretrial statements inculpating the defendant yet testifies that the criminal was actually another person "whose appearance was drastically different," *Ledwon* does not mandate reversal on sufficiency grounds if the

---

**1.** As *De Tore* highlighted, there are situations where the *Ledwon* rule does not apply. *De Tore* explained that

"[t]he rule of the *Ledwon* case is sound, but is not applicable. In the *Ledwon* case, there was no reliable basis offered to the jury to explain the shifting testimony; there was only the testimony of a 12-year-old boy who four times contradicted his own eyewitness versions about his father's death. In this case, on the contrary, there was the one substantial recantation with the witness explaining his reasons for the change, reasons that the jury was entitled to accept or reject" (34 NY2d at 207).

trier of fact "has an objective, rational basis for resolving beyond a reasonable doubt the contradictory inculpating and exculpating versions of the events given by the witness" (*People v Fratello*, 92 NY2d 565, 572-574 [1998], *cert denied* 526 US 1068 [1999] [rejecting a "per se rule of automatic dismissal because of inconsistency between the witness's trial testimony and earlier statements"]).

It therefore follows that *Ledwon* does not apply when a conflict arises from the testimony of more than one witness (*see People v Schulz*, 4 NY3d 521, 530 [2005]). When this occurs, "it is the jury that must weigh the evidence and determine who to believe" (*id.*) because the discrepancy "simply creates a credibility question for the jury . . . to be determined by them in the context of the entire body of evidence before them" (*People v Jackson*, 65 NY2d at 272). Thus, with the exception of the limited scenario envisioned by *Ledwon* and its offspring, we are not empowered to upset a conviction because of differences between the pretrial and trial statements of a witness, even if we believe "that the jury got it wrong" (*People v Calabria*, 3 NY3d at 83).[2] Such authority is vested exclusively in the intermediate appellate court under its obligation to review whether the weight of the evidence supported the verdict (*see e.g. People v Gruttola*, 43 NY2d 116, 122-123 [1977])—a determination governed by a legal standard that is far broader than the one employed in a sufficiency analysis (*see e.g. People v Danielson*, 9 NY3d at 348-349; *People v Romero*, 7 NY3d 633, 643-644 [2006]).

■ With these principles in mind, we conclude that the *Ledwon* rule does not direct the outcome in this case. There certainly were serious conflicts in the trial proof about the perpetrator's physical appearance. Detective Koch testified that, in the immediate aftermath of the robbery, the victim said that the perpetrator was a Hispanic man in his mid-20s who weighed about 140 pounds, was approximately five feet, six inches tall and held a knife in his right hand while he stole property with his left hand. It is undisputed, however, that defendant was 18 years old at the time of the robbery, stood six feet, three inches tall and had a nonfunctioning left arm.

---

**2.** The dissent's contrary conclusion is primarily based on several dissenting opinions, one of which would have reversed a conviction that was supported by legally sufficient evidence if a reviewing court found that "the verdict cannot stand" (*see People v Gruttola*, 43 NY2d 116, 124 [1977, Jones, J., dissenting]). The binding precedent we have cited, however, clearly indicates that this amorphous standard is not the law.

But the victim was unwavering during his testimony at trial that the robber had not used his left arm, that defendant was the person who attacked him and that Detective Koch's recollection of the perpetrator's description was simply incorrect. Furthermore, Hernandez provided a rational explanation for the difference between his memory of the robber and the description provided by Detective Koch that the jury was entitled to accept or reject (*see generally People v Fratello*, 92 NY2d at 574; *People v Schulz*, 4 NY3d at 530).[3] Confronted with the conflicting testimony of these two witnesses, the jury could rationally conclude—as this jury evidently did—that the victim's recollection was credible and accurate, that the attacker had limited mobility in his left arm and that Hernandez did not tell Detective Koch that defendant used both of his arms during the robbery. Because the victim's trial testimony was not inherently inconsistent, this case is not akin to the contradictory versions of the story told by the child in *Ledwon*. Under these circumstances, we cannot overturn the conviction on sufficiency grounds regardless of our subjective assessment of the strength of the People's case (*see People v Calabria*, 3 NY3d at 83; *see also Cavazos v Smith*, 565 US —, —, 132 S Ct 2, 4 [2011] [the "inevitable consequence" of sufficiency principles "is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold"]).[4]

We are concerned, of course, about the incidence of wrongful convictions and the prevalence with which they have been discovered in recent years. The unfortunate fact is that juries occasionally do not return proper verdicts. An important judicial bulwark against an improper criminal conviction is not only the restrictive scope of review undertaken during a sufficiency analysis, but the protection provided by weight of the evidence examination in an intermediate appellate court. This special power requires the court to affirmatively review the record; independently assess all of the proof; substitute its own credibility determinations for those made by the jury in an appropriate

---

**3.** There was also testimony of a woman who lived in Hernandez's apartment building who indicated that she was familiar with defendant and had seen him inside the building on the night of the robbery.

**4.** The dissent's core complaint is that the description Hernandez allegedly gave to Detective Koch was wholly inconsistent with Hernandez's description of the robber at trial. Although it is true that these two recitations are not reconcilable, the dissent necessarily assumes that the jury had to credit Detective Koch's recollection. The jury, however, was not required to be bound by the detective's testimony.

case; determine whether the verdict was factually correct; and acquit a defendant if the court is not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt (*see e.g. People v Romero*, 7 NY3d at 642-644; *People v Crum*, 272 NY 348, 350 [1936]). It permits an intermediate appellate court to serve, in effect, as a second jury (*see People v Romero*, 7 NY3d at 644 n 2). A conviction that was not in accord with the weight of the evidence results in an unreviewable order that rectifies an unjust conviction and precludes subsequent re-prosecution (*see id.*).

Concerns about the propriety of a conviction are heightened in a case like this where there was some evidence that the robber used both of his arms but it was undisputed that only one of defendant's arms was fully functional. We have no doubt that the Appellate Division conscientiously fulfilled its responsibility to independently consider the proof before concluding that the weight of the evidence supported the finding that this defendant robbed Hernandez. Whatever our misgivings about that conclusion, the limitations of our Court's jurisdiction prevent us from second-guessing it. In sum, under the constraints of the applicable standard of review, we hold that the evidence was legally sufficient to prove defendant's guilt beyond a reasonable doubt.

## III

Defendant asserts that the victim's identification should have been suppressed because his son participated in the photo array despite having known defendant for a "long time" prior to the identification procedure. According to defendant, Juan Jr.'s translation service tainted the identification and also infected the victim's identification of defendant during the trial. The People counter that, even if the photo array was unduly suggestive, suppression is not warranted since suggestiveness by a civilian is not illegal and the supposedly suggestive conduct here came from the victim's son, not the police. In any event, the People believe that there was no basis to reopen the suppression hearing after Juan Jr. revealed his preexisting relationship with defendant because the defense could have disclosed this fact at the suppression hearing and the failure to do so precludes defendant from satisfying the reasonable diligence standard of CPL 710.40 (4).

Suggestive pretrial identification procedures violate the Due Process Clause (*see People v Chipp*, 75 NY2d 327, 335 [1990],

*cert denied* 498 US 833 [1990]). When a defendant challenges an identification procedure as suggestive, the People have the "initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness" (*id.*). Once the People satisfy this duty, the defendant has the ultimate burden of proving that the identification procedure was unduly suggestive (*see id.*). A finding that the defendant did not establish suggestiveness may be overturned by this Court if record support for that determination is lacking (*see e.g. People v McBride*, 14 NY3d 440, 448 [2010], *cert denied* 562 US —, 131 S Ct 327 [2010]).

██ In this case, the trial court erred when it denied defendant's motion to reopen the *Wade* hearing because Juan Jr.'s trial testimony fatally undermined the suppression court's rationale for denying that motion. The suppression court had been troubled by Juan Jr.'s role at the identification procedure but ultimately concluded that suppression was not warranted because Juan Jr. did not know defendant. The significant revelation to the contrary at trial considerably strengthened defendant's suggestiveness claim when viewed in conjunction with other relevant facts: (1) the detective acted on unspecified neighborhood gossip (the reliability of which was never directly questioned or tested) regarding the robber's name and history based on information provided by Juan Jr.; (2) the detective was apparently concerned about the son's possible preexisting familiarity with defendant (and the suggestiveness that this could cause) and broached the topic before the photo array was conducted; (3) the detective either was or should have been aware of the substantial risk that the son was familiar with defendant despite his assurance to the contrary; (4) there was no apparent impediment to the detective utilizing a Spanish interpreter who did not have preexisting information about the possible perpetrator or a familial connection to the victim; and (5) the detective could not be reasonably sure that the son would accurately translate the conversation.

Although any one of these facts or even several of them combined may not have established the requisite level of suggestiveness, their confluence with Juan Jr.'s testimony leads us to conclude that the record does not support the finding of the courts below that defendant failed to satisfy his burden of proving that the photo array was unduly suggestive. In our view, the suggestiveness cannot be attributed to the victim's son, but to the detective's decision to utilize him as the interpreter

notwithstanding the possible risks that were involved in this practice (*cf. People v Marte*, 12 NY3d 583, 587 [2009], *cert denied* 559 US —, 130 S Ct 1501 [2010]). In addition, we do not believe that defendant could have discovered, before the suppression court ruled on the motion, the true extent of Juan Jr.'s familiarity with defendant or what Juan Jr. misrepresented to the police (*see* CPL 710.40 [4]). The photo array identification, therefore, should have been suppressed and defendant is entitled to a new trial.[5] Before that occurs, the People may attempt to demonstrate, by clear and convincing evidence, that Hernandez's ability to identify defendant has not been impermissibly influenced by the suggestive pretrial procedure that was employed here (*see e.g. People v Young*, 7 NY3d 40, 44 [2006]; *People v Wilson*, 5 NY3d 778, 779-780 [2005]).

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered to be preceded by an independent source hearing.

Chief Judge LIPPMAN (dissenting). The evidence of defendant's identity as the perpetrator of the robbery of which he was convicted in this case is fundamentally flawed. As the remedy directed by the majority—a new trial to be preceded by an independent source hearing—is inappropriate to the nature of the deficiency of the proof, we respectfully dissent.

In this case, "more than a merely mechanical categorization between law and facts is merited if this court is to perform its great function of review" (*People v Santos*, 38 NY2d 173, 176 [1975]). In order to determine the sufficiency of the evidence adduced at trial, this Court reviews the record "as a whole and [we are] *empowered and obliged* to conclude on a *deficient record* that *guilt has not been established beyond a reasonable doubt* as a matter of law" (*id*. at 175 [emphasis added]). The identification evidence in this case "is not insulated from our responsibility of review by the intervention of a jury verdict for which, in a narrow gauge, it may perhaps be said that there was sufficient evidence, when the record as a whole demonstrates that the verdict cannot stand" (*People v Gruttola*, 43 NY2d 116, 124 [1977, Jones, J., dissenting]). This single eyewitness case "raises a question of law which may not be cured or concealed behind the shield of a jury verdict" (*People v Whitmore*, 28 NY2d 826, 832 [1971, Breitel, J., dissenting], *cert denied* 405 US 956

---

**5.** For this reason, defendant's challenge to trial counsel's effectiveness is academic.

[1972]). Viewing the record as a whole, there is no evidence that defendant committed the crime of which he was convicted other than the victim's identification which has morphed and become so unrecognizable when compared to its original form that no reasonable jury could find it to be accurate beyond a reasonable doubt. We are deeply troubled by the nature of the identification evidence in this case which "raises a serious question of whether an innocent man has been convicted" (*People v Calabria*, 3 NY3d 80, 84 [2004, G.B. Smith, J., dissenting]). Accordingly, we cannot in good conscience support any outcome other than dismissal.

There were serious problems with the identification in this case from the time the robbery was first reported during a 911 call by the victim's son, who impersonated his father and made other statements that admittedly were not true. Shortly thereafter, the victim provided a description to the police of a robber who obviously was not defendant—a man nine inches shorter who, unlike the handicapped defendant, had the full use of both arms. The next day, the victim told his therapist that he had been mugged by a man he recognized from previous sightings in his apartment complex—a fact he had inexplicably failed to mention to the police and that would have rendered such a gross misdescription most improbable. Next, the victim's son reported to police that the rumor circulating around the neighborhood was that the perpetrator was someone with defendant's first name (Sebastian) who had also been shot months earlier at a particular time and in a particular place in the same neighborhood. The victim then participated in the police-arranged showing of a photo array (which the majority has deemed to be unduly suggestive) during which he identified defendant as the perpetrator. He later testified at trial that the robber, now identified as defendant, had only one functional arm, and denied ever saying otherwise.

In *People v Jackson* (65 NY2d 265, 272 [1985]), we held that "[w]hen all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence, the jury is left without basis, other than impermissible speculation, for its determination of either." The majority relies on *People v Fratello* (92 NY2d 565, 573-574 [1998], *cert denied* 526 US 1068 [1999]), wherein we held that

> "when the jury, acting within its rightful province
> of determining credibility, weighing evidence and
> drawing justifiable inferences from proven facts,

has an *objective, rational basis* for resolving beyond a reasonable doubt the contradictory inculpating and exculpating versions of the events given by the witness, its determination of guilt is no longer based on 'impermissible speculation' and should be upheld" (emphasis added).

But in this case there was no objective, rational basis for the jury to decide which version of events provided by the victim it should accept. Here, there was only one witness who was positioned to observe the robbery and the account he gave the police officer soon after the robbery was so radically different from the one he gave at trial that we believe the jury did not have a rational basis to choose between or reconcile the two versions. Although there were several witnesses, all of the identification evidence emanated from one source (the victim) and the jury was left with an impossible choice between two completely contradictory and irreconcilable alternatives given by the same person—one of which compelled a verdict of acquittal. The victim's account was riddled with inconsistencies, so although there is no *"per se* rule of *automatic* dismissal because of inconsistency between the witness's trial testimony and earlier statements" (*id*. at 574 [emphasis added]), we believe under the circumstances present in this case, failure to dismiss here violates the spirit of the rule against singular reliance on a witness who presents a hopelessly contradictory account of the events giving rise to the conviction. We do not reach this conclusion on the basis of a "subjective assessment of the strength of the People's case" (majority op at 116) but rather upon an objective view, in light of facts recognized by the majority, pertaining to fundamental flaws in the evidence of defendant's guilt.

For the foregoing reasons, we dissent and would reverse the order of the Appellate Division, vacate the judgment of conviction and dismiss the indictment.

Judges CIPARICK, READ and PIGOTT concur with Judge GRAFFEO; Chief Judge LIPPMAN dissents and votes to reverse and dismiss the indictment in a separate opinion in which Judges SMITH and JONES concur.

Order reversed, etc.