# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

551
KA 10-00038
PRESENT: SCUDDER, P.J., CENTRA, LINDLEY, SCONIERS, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

ALEXIS OBERLANDER, DEFENDANT-APPELLANT.

---

DEMARIE & SCHOENBORN, P.C., BUFFALO (JOSEPH DEMARIE OF COUNSEL), FOR DEFENDANT-APPELLANT.

LAWRENCE FRIEDMAN, DISTRICT ATTORNEY, BATAVIA (WILLIAM G. ZICKL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Genesee County Court (Robert C. Noonan, J.), rendered January 4, 2010. The judgment convicted defendant, upon a jury verdict, of offering a false instrument for filing in the first degree.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the facts, the indictment is dismissed and the matter is remitted to Genesee County Court for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting her upon a jury verdict of one count of offering a false instrument for filing in the first degree (Penal Law § 175.35). The conviction arises from defendant's failure, with the alleged intent to defraud the Genesee County Department of Social Services (DSS), to report on an application for food stamp benefits that the father of her youngest child (hereafter, father) was living in the household. On a prior appeal, we dismissed 12 of the 13 counts of the indictment for lack of legally sufficient evidence, and we granted a new trial on the instant count (*People v Oberlander*, 60 AD3d 1288).

Contrary to the contention of defendant, when viewing the evidence in the light most favorable to the People and affording the People "all reasonable evidentiary inferences," we conclude that the evidence is legally sufficient to support the conviction (*People v Delamota*, 18 NY3d 107, 113). We nevertheless agree with defendant that the verdict is against the weight of the evidence.

The Court of Appeals has recently reiterated that, in reviewing the weight of the evidence, we must "affirmatively review the record; independently assess all of the proof; substitute [our] own credibility determinations for those made by the jury in an

appropriate case; determine whether the verdict was factually correct; and acquit a defendant if [we are] not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt" (*id.* at 116-117).

The theory of the prosecution's case was that the father lived with defendant at an address in Batavia when she filed her application for recertification for food stamp benefits on November 2, 2005 and that he moved with defendant and her children to another location in mid-November. It is undisputed that defendant advised DSS officials of her intent to move. It is also undisputed that defendant advised a DSS employee in January 2006 that the father would be moving in with her at the new location. The People presented the testimony of the boyfriend of defendant's coworker (hereafter, coworker's boyfriend), who had lived with defendant and provided child care for her at the Batavia residence, as well as the testimony of the coworker herself (coworker). The coworker's boyfriend testified that the father lived with defendant at the Batavia residence and moved with her to the new residence in November 2005. Defendant, the father, as well as defendant's mother, who also cared for the children while defendant worked two jobs and attended business school, all testified that the father did not live with defendant until he moved in with her in January 2006. DSS records reflect that, prior to January 2006 the father resided at an address in Medina, which the father testified was his mother's residence.

After he was granted immunity from prosecution, the coworker's boyfriend testified that he and the coworker "often" smoked crack cocaine while he was caring for defendant's children. He denied that defendant was upset with him when she learned in October 2005 that he had been using drugs while caring for the children. Defendant, however, testified that she and the coworker's boyfriend had a "huge" argument when she learned of his drug use and that, as a result of that information, she advised him that he was no longer welcome to move with her to the new address, as they had planned.

The coworker testified that, in late December 2005, defendant was "visibly upset" when she told the coworker and another coworker that she had lied on her recertification application in early November by failing to report that the father was living with her. Defendant, however, testified that she was upset at the time in question while telling the coworkers about an investigation by Child Protective Services regarding her oldest child that, as she testified, was later determined to be unfounded.

With respect to the conflicting testimony whether the father was living with defendant prior to January 2006, we find that the testimony of both the coworker's boyfriend and the coworker is not credible and that the testimony of defendant and her mother is credible. We therefore conclude that the jury did not properly " 'weigh the relative probative force of [the] conflicting testimony and the relative strength of [the] conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495).

With respect to the documentary evidence in the form of a rental agreement for the new residence that contained the signatures of both defendant and the father, i.e., People's exhibit 9, we note that the landlord testified that he could not recall whether he was present when defendant signed the document, or when and by whom the agreement containing both signatures was returned to him. Defendant, however, testified that she signed the agreement on October 14, 2005, the date reflected on the agreement, in the presence of the landlord, and that the father was not present. Defendant further testified that, when she advised the landlord that the father would be moving into the residence, the landlord informed her that the father was required to sign the rental agreement. Defendant also testified that, on her original copy of the rental agreement, i.e., defendant's exhibit B, which she provided to DSS with her application for recertification, the landlord noted his receipt of the security deposit. We have reviewed the originals of both exhibits and conclude that two original rental agreements were signed by defendant on October 14, 2005. The landlord acknowledged the receipt of the security deposit on the document that defendant retained and the father signed the document that the landlord retained. The documentary evidence however, when considered together with the landlord's testimony and defendant's testimony, is inconclusive with respect to when the father signed the agreement. Therefore, with respect to whether People's exhibit 9 established that the father lived with defendant before January 2006, we conclude that the jury "failed to give the evidence the weight it should be accorded" (*id.*).

Because we conclude that the verdict is against the weight of the evidence, we reverse the judgment and dismiss the indictment (*see Delamota*, 18 NY3d at 117). In light of our determination, we need not address defendant's remaining contentions.

Entered:  April 20, 2012                          Frances E. Cafarell
                                                  Clerk of the Court