People v Brumfield (2025 NY Slip Op 00764)

People v Brumfield

2025 NY Slip Op 00764

Decided on February 7, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 7, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, NOWAK, AND DELCONTE, JJ.

869 KA 22-01560

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RAYSHAWN BRUMFIELD, DEFENDANT-APPELLANT. 

SARAH S. HOLT, CONFLICT DEFENDER, ROCHESTER (STEPHANIE M. STARE OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (BRIDGET L. FIELD OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered March 30, 2022. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the facts, the indictment is dismissed, and the matter is remitted to Supreme Court, Monroe County, for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]), defendant contends, inter alia, that the verdict is against the weight of the evidence. We agree and therefore reverse the judgment and dismiss the indictment.
On the night in question, defendant was sitting in the rear passenger's side seat of a vehicle being operated by another person (driver). Two other people were also present in the vehicle as passengers. Eventually, another vehicle pulled up behind the driver's vehicle and opened fire. Shots also were fired from the driver's vehicle towards the other vehicle. During the shooting, the other person sitting in the rear of the driver's vehicle accidently shot the front seat passenger in the head, causing her death. After the shooting, when the police responded to the scene, they recovered, inter alia, multiple .22 caliber casings. Testimony at trial established that the .22 caliber casings could have come from either a semiautomatic pistol or rifle. The police never recovered any firearm in connection with the shooting.
A review of the weight of the evidence requires us to first determine whether an acquittal would have been unreasonable (see People v Danielson, 9 NY3d 342, 348 [2007]). If we determine that an acquittal would not have been unreasonable, then we "must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (id.). We thus " 'serve, in effect, as a second jury' with the power to 'independently assess all of the proof' " (People v Gonzalez, 174 AD3d 1542, 1544 [4th Dept 2019], quoting People v Delamota, 18 NY3d 107, 116-117 [2011]). In conducting a weight of the evidence review, we view the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349).
As relevant here, "[a] person is guilty of criminal possession of a weapon in the second degree when[,] . . . with intent to use the same unlawfully against another, such person . . . possesses a loaded firearm" (Penal Law § 265.03 [1] [b]). Additionally, "[a] person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" outside of their "home or place of business" (§ 265.03 [3]). As further relevant here, a " '[f]irearm' means . . . any pistol or revolver[,] or . . . a rifle having one or more barrels less than [16] inches in length" (§ 265.00 [3] [a], [c]). The Penal Law also more generally [*2]describes a "firearm" as including "any . . . weapon . . . containing any component that provides housing or a structure designed to hold or integrate any fire control component that is designed to or may readily be converted to expel a projectile by action of explosive" (§ 265.00 [3] [f]).
Here, however, the indictment and jury charge expressly limited the People's theory to allege only that, at the time in question, defendant possessed either a "pistol or revolver"—i.e., the People did not charge defendant on the theory that, at the time in question, he possessed a "rifle" or the more generally-defined type of firearm. Where the prosecution is limited by the indictment and jury charge "to a certain theory or theories, the court must hold the prosecution to such narrower theory or theories" (People v Faison, 198 AD3d 1263, 1264 [4th Dept 2021] [internal quotation marks omitted]; see generally Danielson, 9 NY3d at 349). We also note that, at trial, the People conceded that there was no evidence that defendant ever possessed a "revolver." Consequently, to find defendant guilty of both counts of criminal possession of a weapon in the second degree, the jury was required to find, beyond a reasonable doubt, that defendant possessed a loaded pistol. Evidence that defendant possessed another type of firearm at the time in question would not warrant finding defendant guilty of the crimes as alleged in the indictment and charged to the jury (see Danielson, 9 NY3d at 349; Faison, 198 AD3d at 1264).
We conclude that an acquittal would not have been unreasonable under the circumstances. Given that no gun was recovered in connection with the underlying events and the absence of any evidence directly establishing that defendant possessed a pistol at the relevant time, the jury could have acquitted defendant by crediting the testimony of the driver that she did not see any weapons in the vehicle at the time of the shooting. After performing an independent review of the trial evidence, we also conclude that the jury was not justified in finding defendant guilty of the charged crimes (see generally Danielson, 9 NY3d at 348-349). The evidence at trial established, beyond a reasonable doubt, that defendant was present in the vehicle and possessed some type of firearm at the time of the shooting. With respect to the latter issue, the evidence contained video footage showing muzzle flashes emanating from the part of the vehicle where defendant was sitting and he stated to the victim's mother that "his bullet didn't kill" the victim (emphasis added). However, we conclude that the evidence did not establish beyond a reasonable doubt that he possessed a pistol at that time.
As noted above, the indictment and the jury charge specifically narrowed the theory of the case to require the People to establish that defendant possessed a loaded pistol at the time in question. Here, the evidence permitted, at best, mere speculation that the firearm defendant allegedly possessed was a pistol, and not a rifle. Video footage of the shooting shows multiple muzzle flashes indicative of gunfire from the vehicle—it does not directly depict the firearm that is firing the shots. Moreover, the angle of the video does not permit an observer to make any reasonable inferences about what type of firearm is being fired at the relevant time. Nothing in the video establishes that the firearm being fired was a pistol rather than another type of firearm.
Additionally, the driver's testimony provided no affirmative evidence, either direct or circumstantial, to establish that defendant possessed any loaded firearm at the time in question, let alone that he specifically possessed a pistol as opposed to some other type of firearm. Indeed, we note that, at times she testified that she never saw a rifle in the car, at other times the driver testified that she never saw any weapons in the car; furthermore at yet other times she testified that she never looked in the back of the car at the relevant time to see what defendant was doing. In short, the driver's testimony was wholly equivocal on what type of firearm, if any, that defendant possessed. Additionally, the ballistics evidence introduced at trial also failed to establish whether defendant possessed a pistol beyond a reasonable doubt. That evidence merely established that the .22 caliber casings recovered from the scene could have come from one of many different types of semiautomatic pistols or rifles. It is impossible from that testimony to do anything but speculate that the casings came from a pistol, rather than a different type of loaded firearm. The ballistics evidence, even when coupled with the witness testimony and video evidence, was entirely equivocal on the type of firearm that defendant purportedly possessed.
Although we are mindful of our obligation to "give great deference to a jury's credibility determinations," in this case "the jury was not called upon to make credibility determinations" on the critical issue of the type of firearm defendant allegedly possessed (People v Carter, 158 AD3d 1105, 1112 [4th Dept 2018]). Indeed, "almost all of the relevant facts adduced at trial [with respect to that issue] were [either] undisputed [or clearly established]. Instead, [on the [*3]issue of the type of firearm allegedly possessed by defendant], the jury was asked to make inferences based on the evidence, a task that we are no less qualified to make" (id.). Ultimately, none of the evidence at trial could fairly exclude the possibility that defendant possessed a loaded firearm other than a pistol. Therefore, the jury could not reasonably conclude, beyond a reasonable doubt, that he possessed a pistol. Any inference to that effect would be nothing more than a guess.
In sum, based on our independent review of the evidence, and viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), we conclude that the verdict is against the weight of the evidence and cannot stand (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). In light of our determination, defendant's remaining contentions are academic.
Entered: February 7, 2025
Ann Dillon Flynn
Clerk of the Court