Matter of Cynque T. (2026 NY Slip Op 01147)

Matter of Cynque T.

2026 NY Slip Op 01147

Decided on February 26, 2026

Appellate Division, First Department

Rodriguez, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 26, 2026
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
Ellen Gesmer Julio Rodriguez III John R. Higgitt Marsha D. Michael

Index No. 12967/24|Appeal No. 5109|Case No. 2024-07879|

[*1]In the Matter of Cynque T., A Person Alleged to be a Juvenile Delinquent, Appellant.

Appeal taken from the order of disposition, Family Court, Bronx County (Peter J. Passidomo, J.), entered on or about August 29, 2024, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed acts which, if committed by an adult, would constitute the crimes of assault in the second degree (two counts) and assault in the third degree (two counts), and placed him in a nonsecure placement for a period of 12 months.

Twyla Carter, The Legal Aid Society, New York (John A. Newbery and Eileen Malunowicz of counsel), for appellant.
Muriel Goode-Trufant, Corporation Counsel, New York (Janet L. Zaleon and Devin Slack of counsel), for respondent.

RODRIGUEZ, J. 

In this appeal from a juvenile delinquency order of disposition, appellant challenges the propriety of Family Court's adjudication of him on two counts of assault in the second degree under Penal Law § 120.05 (3) and two counts of assault in the third degree under Penal Law § 120.00 (1) and (2). Appellant argues that the adjudication is deficient on multiple grounds. First, he contends that the petition and supporting depositions were facially insufficient. More pointedly, he then argues that Family Court's findings at the conclusion of the fact-finding hearing were not supported by sufficient evidence and, further, were against the weight of the evidence.
The charges at issue arise from appellant's fight with another boy outside a probation office in the Bronx. As noted briefly below, the two counts of assault in the third degree were predicated upon facially sufficient charging documents, and Family Court's findings on those counts were supported by sufficient evidence and were not contrary to the weight of the evidence. The court's findings concerning the counts of assault in the second degree, however, were against the weight of the evidence. Specifically, the weight of the evidence does not support the court's findings that appellant had the requisite intent beyond a reasonable doubt to prevent the responding probation officers from performing their lawful duties. The order of disposition should thus be modified to dismiss the two counts of assault in the second degree, and otherwise affirmed.
I.
On May 31, 2024, the presentment agency filed a petition alleging the four counts described above. The two counts of assault in the second degree alleged that appellant prevented two separate probation officers from performing their lawful duties when they responded to a fight between appellant and another boy (Penal Law § 120.05 [3]). The first count of assault in the third degree alleged that appellant intentionally caused physical injury to one of the responding officers (Penal Law § 120.00 [1]), and the second alleged that he recklessly caused physical injury to another (Penal Law § 120.00 [2]).
According to supporting depositions from Probation Officers Perez, Wynter, and Mackey, the incident occurred at 12:20 p.m. on April 11, 2024, at 215 East 161st Street in the Bronx, near the fifth-floor elevators outside a probation office. After appellant's probation meeting, Officer Perez was escorting him to the elevators when the two passed another boy, Bryant, in the waiting room. After Bryant followed them to the elevator bank, Bryant and appellant exchanged words and then started fighting. Officers Wynter and Mackey separately reported that they heard screaming and looked toward the elevator bank, where they observed two males fighting with "closed fists" in the presence of Perez. Wynter and Mackey intervened.
Wynter recounted that he "grabbed one of the males to separate them from each other" and, "as I was holding one of the males, I was punched in the face once with a closed fist by the male that my supervisor [Mackey] was holding back." Mackey stated that she grabbed one of the males while Wynter grabbed the other. Mackey further stated, "[a]s I was trying to restrain the male I was holding[,] he was still trying to lunge at the other male"; this resulted in Mackey's left foot and ankle twisting in the opposite direction.
The same three officers testified at the fact-finding hearing. All three stated that they gave verbal commands to stop fighting and that the boys did not comply. Perez and Wynter described appellant and Bryant as "face to face" even after the officers grabbed them, and Mackey stated that they were within three to five feet of each other throughout the incident. Despite being restrained by the officers, appellant and Bryant's arms were free, and they were "going back and forth verbally [and] trying to hit each other physically." During the fight, appellant and Bryant were punching each other in the upper body and facial area with "closed fists." Consistent with his supporting deposition, Wynter testified that he was hit with a single punch. Perez testified that Mackey held appellant, and Wynter testified that he was struck by the boy held by Mackey.
Wynter went to the hospital, experienced swelling and pain, and required treatment with pain killers and muscle relaxers. He experienced a sharp pain for about a month radiating from his right ear down to his shoulder when he turned his head to the right. Mackey sustained a sprained ankle and foot during the encounter. She was treated at the emergency room, where she received X-rays, pain medication, and muscle relaxers, and was discharged with a cane and a hard boot, both of which she used for several weeks.
None of the officers were asked to estimate the duration of the incident. Additionally, the officers' depictions of the altercation consistently described the boys as engrossed with throwing closed-fisted punches at each other until separated, at which time the fight de-escalated.
At the conclusion of the hearing, Family Court found that the testimony established beyond a reasonable doubt that appellant had committed the four counts of delinquent acts. As relevant here, the court found that it was "reasonable to conclude that [appellant], who was standing there, heard the commands from multiple probation officers to stop"; that the boys "ignored the commands" despite "multiple opportunities to stop the fight"; and that the boys "were still swinging at each other when the Probation Officers attempted to move them away from each other." In the resulting order of disposition, the court adjudicated appellant as having committed acts that, if committed by an adult, would constitute each of the four crimes charged—namely, second-degree assault under Penal Law § 120.05 (3) (counts one and two), third-degree assault under Penal Law § 120.00 (1) (count three), and third-degree assault under Penal Law § 120.00 (2) (count four).
II.
The elements of assault in the third degree under Penal Law § 120.00 (1) are intent to cause physical injury to another person and causing such an injury (see Penal Law § 15.05 [1]). The offense is satisfied if physical injury occurs, even if the person injured is "a third person" (i.e. not the intended target) (Penal Law § 120.00 [1]). Assault in the third degree under Penal Law § 120.00 (2), by contrast, requires only recklessness in causing physical injury to another person (see Penal Law § 15.05 [3]).
As noted at the outset, the order of disposition correctly adjudicated appellant on counts three and four as having committed acts that, if committed by an adult, would constitute assault in the third degree under Penal Law § 120.00 (1) and (2). The petition and supporting depositions were facially sufficient in that they provided reasonable cause to believe that appellant committed the criminal acts charged and included nonhearsay allegations that, if true, would establish "every element of each crime charged and the appellant's commission thereof" (Family Ct Act § 311.2 [2], [3]; see Matter of Michael M., 3 NY3d 441, 448 [2004]; Matter of Jahron S., 79 NY2d 632, 639 [1992]; see also e.g. People v Jackson, 18 NY3d 738, 747 [2012] [facial sufficiency evaluated by "drawing reasonable inferences from all the facts set forth"]; People v Casey, 95 NY2d 354, 360 [2000] [allegations in supporting depositions should be given "a fair and not overly restrictive or technical reading"]).
Additionally, the court's findings on these two counts following the fact-finding hearing were based on legally sufficient evidence and were not against the weight of the evidence (see e.g. Matter of Juan P., 114 AD3d 460, 462 [1st Dept 2014], citing People v Danielson, 9 NY3d 342, 348-349 [2007]; see also People v Baque, 43 NY3d 26, 29-30 [2024]). Because the evidence showed that appellant intentionally threw a punch at the other boy and that the punch struck Wynter while he restrained the other boy, the evidence established appellant's guilt of intentional assault (see Penal Law § 120.00 [1] ["causes injury to such person or to a third person"]; see also People v Fernandez, 88 NY2d 777, 781 [1996]). The evidence likewise supported the inference that appellant disregarded a substantial and unjustifiable risk that the individuals attempting to restrain the boys and stop the fight would sustain an injury (see Penal Law §§ 15.05 [3], 120.00 [2]; see also Matter of Derek C., 44 AD3d 346, 346 [1st Dept 2007]). Finally, there is no dispute that the officers suffered injuries (see Penal Law § 10.00 [9]; People v Wheeler, 40 NY3d 925, 926 [2023]; People v Chiddick, 8 NY3d 445, 447 [2007]).
III.
Assuming the two counts of assault in the second degree (Penal Law § 120.05 [3]) were supported by facially sufficient charging documents and sufficient evidence at the fact-finding hearing, we turn to whether the court's findings on these two counts comported with the weight of the evidence. On this issue, appellant principally contends that the court's conclusions regarding both counts' intent elements were contrary to the weight of the officers' testimony at the hearing. The presentment agency responds that the evidence supported the court's conclusion that appellant recognized the officers as trying to stop the fight yet ignored their commands while forcefully resisting Mackey's restraint. The presentment agency thus argues that the findings were adequately supported. As discussed below, the evidence presented at the hearing fails to adequately support the adjudication of these counts upon our weight-of-the-evidence review, specifically as to the required intent beyond a reasonable doubt.
A.
As relevant here, Penal Law § 120.05 (3) provides: "A person is guilty of assault in the second degree when: . . . 3. With intent to prevent [an] officer . . . from performing a lawful duty, . . . he or she causes physical injury to such [] officer." Accordingly, a person is guilty of the offense when their conscious objective or purpose is to prevent an officer from performing their lawful duty, the person acts in a manner consistent with that intent, and the officer is injured (see Penal Law § 15.05 [1]).
The presentment agency was therefore required to demonstrate that appellant acted intentionally—that is, with a "conscious objective [] to cause such result or to engage in such conduct" (id.; compare CJI2d[NY] Penal Law § 120.05 [3], available at https://www.nycourts.gov/judges/cji/2-PenalLaw/120/120-05%283%29.pdf [last accessed Feb. 4, 2026] ["INTENT means conscious objective or purpose. Thus, a person acts with intent to prevent a[n] [officer] from performing a lawful duty when that person's conscious objective or purpose is to prevent such person from performing a lawful duty."] with Penal Law § 15.05 [3]). As "intent is an 'invisible operation of [the] mind,' direct evidence of intent is rarely available" (People v Rodriguez, 17 NY3d 486, 489 [2011], quoting People v Samuels, 99 NY2d 20, 24 [2002] [internal citation omitted]). Evidence concerning a party's conduct, as well as the surrounding circumstances, may thus be probative of intent (see People v Lamont, 25 NY3d 315, 319 [2015]; People v Gordon, 23 NY3d 643, 650 [2014]).
Under Penal Law § 120.05 (3), the relevant mental state is that of preventing an officer from performing their lawful duty, as opposed to intent to cause injury (see People v Rojas, 97 NY2d 32, 40 [2001] ["A person who seeks to prevent a police officer from performing a lawful duty is criminally answerable under section 120.05 (3) for injuring the officer, even when there is no intent to injure"]; see also People v Bueno, 18 NY3d 160, 170 [2011] [defendant acted "with the intent to prevent an EMT from performing a lawful duty"]; People v Hernandez, 39 AD3d 283, 283 [1st Dept 2007] [evidence "supported the inference that defendant knew his victim was a police officer, and acted with the requisite intent"]).
Prevention or interference with an officer's performance of their lawful duties includes individuals' attempts to flee (see e.g. People v Jensen, 86 NY2d 248, 251, 254 [1995] [defendant slapped a security officer's hand away and fled, and officer was injured in pursuit]; People v Pena, 129 AD3d 600, 600 [1st Dept 2015], lv denied 26 NY3d 933 [2015] [defendant drove forward while officer was holding onto defendant in an attempt to remove him from the vehicle]). The charge has also been properly predicated upon sustained struggles with officers (see e.g. Matter of Ismaila M., 34 AD3d 373, 373-374 [1st Dept 2006], lv denied 8 NY3d 808 [2007] [after causing a disturbance in school cafeteria, the juvenile defied safety officer's directives and screamed, cursed, flailed, and struggled with the officer]; Matter of Quaniqua W., 25 AD3d 380, 380 [1st Dept 2006] [after causing a disturbance in a subway station, the juvenile refused to comply with safety officers' directives and similarly struggled with the officers]).
In Baque, the Court of Appeals described the applicable standard for this Court's exercise of its " 'unique' power" of weight-of-the-evidence review (43 NY3d 26, 29 [2024], quoting People v Bleakley, 69 NY2d 490, 495 [1987]). As the Court explained, weight-of-the-evidence review "requires the Appellate Division to 'independently assess all the proof' and 'to serve, in effect, as a second jury' " (Baque, 43 NY3d at 29, quoting People v Delamota, 18 NY3d 107, 116-117 [2011]). This Court accordingly must first
" 'determine whether an acquittal would not have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt' " (Baque, 43 NY3d at 30, quoting People v Danielson, 9 NY3d 342, 348 [2007]).
In reviewing the evidence, we "afford deference to the 'fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor' " (Baque at 30, quoting People v Romero, 7 NY3d 633, 644 [2006]), though we may " 'substitute [our] own credibility determinations for those made by the jury in an appropriate case' " (Baque at 30, quoting People v Delamota, 18 NY3d 107, 116-117).
Critically here, if a case or an element of the required showing "is based upon purely circumstantial evidence . . . , [this Court] must satisfy itself that 'the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence' " (Baque at 30, quoting People v Sanchez, 61 NY2d 1022, 1024 [1984]). In other words, we should be "satisfied that the [factfinder] was justified in finding guilt beyond a reasonable doubt" (Baque at 30).
The same standard applies when reviewing juvenile delinquency adjudications (see e.g. Matter of Daquan W., 233 AD3d 526, 527 [1st Dept 2024], citing Baque, 43 NY3d 26, and People v Danielson, 9 NY3d at 348-349; Matter of Clint B., 96 AD3d 534, 534 [1st Dept 2012], citing Danielson, 9 NY3d at 348-349). For example, in Matter of Tayquan T., this Court relied on the above precedent to reverse Family Court's adjudication and dismiss the petition upon finding that the disposition was against the weight of the evidence (91 AD3d 518, 518-519 [1st Dept 2012]; see id. at 518 ["Acting in our role as a second factfinder, we are 'not convinced that the [court] was justified in finding that guilt was proven beyond a reasonable doubt' "], quoting Delamota, 18 NY3d at 117; see also Matter of Kadeem W., 5 NY3d 864, 865 [2005] [remanding juvenile delinquency matter "to the Appellate Division for consideration of the facts, specifically including its weight-of-the-evidence review"]; Matter of Brandon S., 169 AD3d 1047, 1047-1048 [2d Dept 2019] [conducting weight-of-the-evidence review in appeal from juvenile delinquency adjudication], citing Danielson, 9 NY3d at 348; Matter of Christopher T., 71 AD3d 1384, 1385 [4th Dept 2010], lv denied 15 NY3d 701 [2010] [same], citing Danielson, 9 NY3d at 348).
B.
The court's adjudication on the two counts of assault in the second degree was against the weight of the evidence. The full testimony adduced at the hearing failed to give rise to an inference of sufficient force that appellant developed a conscious or purposeful intent to prevent the officers from performing their lawful duties. First, the testimony contained no indication that appellant's focus ever shifted from Bryant to the officers; rather, the testimony showed that appellant and Bryant were singularly focused on each other until the fight's conclusion. Second (and relatedly), the weight of the evidence shows that there was not even a moment of opportunity for such a shift in focus to occur or otherwise for appellant to recognize and consciously disregard the officers' demands. Accordingly, the evidence presented concerning the intent element under Penal Law § 120.05 (3) did not support the court's adverse finding against appellant beyond a reasonable doubt (see Baque, 43 NY3d at 30, quoting Danielson, 9 NY3d at 348). The two second-degree assault counts should therefore be dismissed.
On the initial point, appellant and Bryant's overwhelming focus on each other during the incident undermines any conclusion beyond a reasonable doubt that appellant directed his conduct or attention at the officers (cf. People v Caraballo, 136 AD3d 937, 940 [2d Dept 2016], lv denied 27 NY3d 1067 [2016]; Matter of Derek C., 44 AD3d 346, 346 [1st Dept 2007]). In particular, the testimony showed that appellant and Bryant were swinging exclusively at each other, and that their struggling with the officers was incidental to their actions. The officers testified that from start to finish appellant and Bryant were in close proximity and fully engaged with one another: the boys were "face to face" even after the officers grabbed them; they were "throwing punches," "jawing back and forth," and "swinging" at one another; even though appellant and Bryant were being restrained, their arms were free, and they kept punching each other in the upper body and facial area with "closed fists"; and despite being held by the officers, they were "still going back and forth verbally and trying to hit each other physically." Without more, the boys' body language and conduct thus demonstrated that they were wholly focused on one another.
Although Wynter testified that he was struck by a punch "just once," he did not explain the circumstances surrounding this punch in any further detail. In view of the other evidence depicting a brief, flailing altercation in which the boys were completely focused on swinging at each other, there is no basis to conclude beyond a reasonable doubt that appellant targeted any blows or other aggression at the officers at any time. In other words, the balance of the testimony strongly suggested that this was a sole stray punch—unsurprising for a "swinging" fight. As for the altercation's conclusion, Wynter's concise testimony described the boys' separation and de-escalation as simultaneous.
The record therefore lacks any indication that appellant directed his actions at the officers, whether by turning around, throwing an elbow backward, or in some other way (cf. Bueno, 18 NY3d at 168-169 [the defendant assaulted a working EMT]; Caraballo,136 AD3d at 940 [in a struggle with an off-duty officer, the juvenile attempted to turn officer's gun on him despite officer's identification]; Derek C., 44 AD3d at 346 [noting the juvenile's "continuous struggle" with officer in support of adjudication under Penal Law § 120.05 (3)]). There was also no objective indication whatsoever that the boys registered and disregarded the officers' commands (cf. People v Torres, 130 AD3d 1082, 1085 [2d Dept 2015], lv denied 26 NY3d 1093 [2015] [finding on intent supported by evidence showing when officer identified himself, the "defendant, after briefly hesitating, continued his charge"]). Accordingly, the court had no basis to infer beyond a reasonable doubt that appellant's conduct or attention was ever addressed toward the officers.
Similarly, the evidence at the hearing did not show beyond a reasonable doubt that appellant had even a chance to recognize and consciously disregard the officers' directives. Although all three officers testified that they gave verbal commands to stop fighting and that the boys did not comply, the officers' testimony described a rapid encounter, and there was otherwise no description of the altercation's duration. Importantly, the officers' testimony in full demonstrated a strong likelihood that the altercation concluded in a very short period of time. Given the absence of definitive testimony regarding the incident's duration, in context with the other evidence, there was no fair basis for the inference beyond a reasonable doubt that appellant had even the opportunity to develop the requisite intent.
IV.
Where a case or an element of the presentment agency's required showing "is based upon purely circumstantial evidence," this Court's weight-of-the-evidence review includes determining whether " 'the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and [whether] the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence' " (Baque, 43 NY3d at 30, quoting Sanchez, 61 NY2d at 1024).
Although appellant did not react to the officers' verbal commands or physical restraint, the record demonstrates that the fight was brief in duration and, further, that the boys' conduct was overwhelmingly directed toward brawling with each other. Appellant's lack of reaction is thus more readily explained by other factors (e.g. a preoccupation with other objectives and a failure to consciously apprehend the officers' instructions) than by a deliberate disregard for the officers' commands. Indeed, the stronger inference is that appellant's lone focus and intent was assaulting Bryant, the incident's initiator.
Under these circumstances, an acquittal would not have been unreasonable, and the court was not justified in finding that appellant had the requisite intent to interfere with the officers' lawful duties beyond a reasonable doubt (see Baque, 43 NY3d at 30; see also Tayquan T., 91 AD3d at 518). The court's adjudication on the two counts of second-degree assault was accordingly contrary to the weight of the evidence, and the order of disposition should thus be modified to dismiss the two counts of assault in the second degree under Penal Law § 120.05 (3).
Finally, because the dispositional order on appeal was entered on or about August 29, 2024, and the ordered nonsecure placement for 12 months has terminated, we decline to remand for further proceedings (see Matter of Corey L., 140 AD2d 609, 609 [2d Dept 1988]; Matter of Patrick R., 131 AD2d 678, 678-679 [2d Dept 1987] ["the appropriate remedy under the circumstances is dismissal"]; see also Matter of Alex Z., 82 AD3d 995, 996 [2d Dept 2011]; cf. Matter of Joseph P., 229 AD2d 318, 318 [1st Dept 1996]).
Accordingly, the order of disposition, Family Court, Bronx County (Peter J. Passidomo, J.), entered on or about August 29, 2024, which adjudicated appellant a juvenile delinquent, upon a fact-finding determination that he committed acts which, if committed by an adult, would constitute the crimes of assault in the second degree (two counts) and assault in the third degree (two counts), and placed him in a nonsecure placement for a period of 12 months, should be modified, on the law, the adjudication vacated as to the two counts of assault in the second degree, those two counts dismissed, and otherwise affirmed, without costs.
Order of disposition, Family Court, Bronx County (Peter J. Passidomo, J.), entered on or about August 29, 2024, modified, on the law, the adjudication vacated as to the two counts of assault in the second degree, those two counts dismissed, and otherwise affirmed, without costs.
Opinion by Rodriguez, J. All concur.
Moulton, J.P., Gesmer, Rodriguez, Higgitt, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 26, 2026