People v Spencer (2020 NY Slip Op 01823)





People v Spencer


2020 NY Slip Op 01823


Decided on March 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CURRAN, WINSLOW, AND BANNISTER, JJ.


1237 KA 15-01398

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DEVANTE SPENCER, DEFENDANT-APPELLANT. 






MARK D. FUNK, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (DANIEL GROSS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (James J. Piampiano, J.), rendered April 16, 2015. The judgment convicted defendant upon a jury verdict of murder in the second degree, assault in the first degree (two counts), criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is modified on the law by reversing those parts convicting defendant of two counts of assault in the first degree and one count of criminal use of a firearm in the first degree and dismissing counts two through four of the indictment against him, and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]), criminal use of a firearm in the first degree (§ 265.09 [1] [a]), criminal possession of a weapon in the second degree (§ 265.03 [3]), and two counts of assault in the first degree (§ 120.10 [1]). The conviction arises from an incident in which a codefendant shot three men on a street in Rochester, killing one and wounding two. Defendant, who drove the shooter to and from the crime scene and provided the weapon used to shoot the victims, was charged as an accessory to all three shootings. Defendant contends that the evidence is legally insufficient to support the conviction of murder in the second degree and assault in the first degree because the People failed to establish that he possessed the requisite mental state for the commission of those crimes (see § 20.00). "Viewing the evidence in the light most favorable to the People, and giving them the benefit of every reasonable inference" (People v Bay, 67 NY2d 787, 788 [1986]; see People v Delamota, 18 NY3d 107, 113 [2011]; People v Perkins, 160 AD3d 1455, 1455 [4th Dept 2018], lv denied 31 NY3d 1151 [2018]), we conclude that the evidence is legally sufficient with respect to the murder conviction, but it is not legally sufficient with respect to the assault and criminal use of a firearm convictions.
Insofar as relevant here, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he [or she] causes the death of such person" (Penal Law
§ 125.25 [1]). Defendant was convicted of murder under a theory of accessorial liability, and a person is criminally liable for the conduct of another "when, acting with the mental culpability required for the commission thereof, he [or she] solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (§ 20.00; see People v McDonald, 172 AD3d 1900, 1901 [4th Dept 2019]). A defendant's intent to kill may be inferred from his or her conduct as well as the circumstances surrounding the crime (see People v Price, 35 AD3d 1230, 1231 [4th Dept 2006], lv denied 8 NY3d 926 [2007]). Here, the People presented evidence establishing that defendant shared his codefendant's intent to kill the victim and intentionally aided the codefendant by, inter alia, planning the shooting beforehand, informing the codefendant where the victim was located, driving the codefendant to that location, providing the weapon [*2]used in the shooting, and driving the codefendant away from the scene immediately thereafter (see People v Cabassa, 79 NY2d 722, 728 [1992], cert denied 506 US 1011 [1992]; People v Rutledge, 70 AD3d 1368, 1369 [4th Dept 2010], lv denied 15 NY3d 777 [2010]).
We reach a different result with respect to the assault counts, however, and we therefore modify the judgment by reversing those parts convicting defendant of assault in the first degree and dismissing the second and third counts of the indictment against him. Like the count of murder in the second degree, defendant was charged with those crimes as an accessory, but the People alleged that defendant was guilty of the assault charges under the theory of transferred intent. "The doctrine of transferred intent' serves to ensure that a person will be prosecuted for the crime he or she intended to commit even when, because of bad aim or some other lucky mistake,' the intended target was not the actual victim" (People v Fernandez, 88 NY2d 777, 781 [1996]; see People v Dubarry, 25 NY3d 161, 170-172 [2015]). Although that theory may be applied to assault charges (see e.g. People v Williams, 124 AD3d 920, 921 [2d Dept 2015], lv denied 25 NY3d 993 [2015]; People v Jacobs, 52 AD3d 1182, 1184 [4th Dept 2008], lv denied 11 NY3d 926 [2009]), County Court's jury instruction in this case mandated that the jury could convict defendant of the counts of assault in the first degree only if they found that he acted "with the intent to cause serious physical injury to" each assault victim, rather than instructing the jury that they could convict defendant of those crimes if they concluded that he intended to cause such injury to the deceased victim but the codefendant actually caused injury to the assault victims. The prosecution did not object to that charge, and it is well settled that, when reviewing a "jury's guilty verdict, our review is limited to whether there was legally sufficient evidence . . . based on the court's charge as given without exception" (People v Sala, 95 NY2d 254, 260 [2000]; see People v Prindle, 16 NY3d 768, 770 [2011]; People v Ford, 11 NY3d 875, 878 [2008]). Inasmuch as there is insufficient evidence that defendant knew that either of the assault victims was present or that he intended any harm to either of them (cf. People v Allah, 71 NY2d 830, 831-832 [1988]), we conclude that the evidence is not legally sufficient with respect to the assault counts as charged to the jury.
Contrary to the supposition in the dissent, we do not overtly nor implicitly disavow our decision in Jacobs, in which we affirmed "a conviction of assault . . . , which was based on a theory of transferred intent" (52 AD3d at 1184). Although the dissent is correct that the court's initial charge there was similar to the one given here, we affirmed in that case because "[t]he record establishe[d] that the court's final charge on [the assault] count, to which there was no objection by defendant, adequately set forth the elements of that crime" (id.). In that final charge in Jacobs, the court responded to a jury question regarding whether the pertinent assault charge applied to contact with someone who was not the intended victim, and the court thereafter correctly explained the law of transferred intent to the jury. Here, to the contrary, the court only instructed the jurors that, in order to convict defendant of assault in the first degree regarding the injured victim, they must be convinced beyond a reasonable doubt that defendant had "the intent to cause serious physical injury to [the injured victim]," rather than specifying the name of the deceased victim whom defendant intended that the codefendant harm.
We also reject the dissent's supposition that our determination will call into question the Criminal Jury Instructions (CJI). We continue to "urge Trial Judges . . . to use the language set forth in the current Criminal Jury Instructions" (People v Slater, 270 AD2d 925, 926 [4th Dept 2000], lv denied 95 NY2d 858 [2000]), and indeed we note that if the court here had complied with the CJI directive to "(specify)" the person to whom defendant intended that the codefendant cause injury (CJI2d[NY] Penal Law § 120.10 [1]), this issue would not be present.
The evidence is also legally insufficient with respect to the criminal use of a firearm in the first degree count, and we therefore further modify the judgment accordingly. With respect to that count, the indictment charged defendant with using a loaded firearm during the commission of the crime of assault in the first degree. Although the court's jury instructions did not specify assault in the first degree as the underlying crime for the criminal use of a firearm in the first degree count, and defendant did not object to the court's instructions and thus did not preserve this issue for our review, we conclude that "preservation is not required" (People v Greaves, 1 AD3d 979, 980 [4th Dept 2003]), inasmuch as "defendant has a fundamental and nonwaivable right to be tried only on the crimes charged" in the indictment (People v Duell, 124 AD3d 1225, 1226 [4th Dept 2015], lv denied 26 NY3d 967 [2015] [internal quotation marks omitted]; see Greaves, 1 AD3d at 980; People v Burns, 303 AD2d 1032, 1033 [2003]). Therefore, based on [*3]the indictment, defendant could only be convicted of that charge if he committed assault in the first degree (cf. People v Canteen, 295 AD2d 256, 256-257 [1st Dept 2002], lv denied 98 NY2d 729 [2002]; People v Gerard, 208 AD2d 421, 422 [1st Dept 1994], lv denied 85 NY2d 973 [1995]). Thus, we conclude that, because "the conviction[s] of assault in the first degree cannot stand, the conviction of criminal use of a firearm in the first degree, which requires commission of [the] class B violent felony offense[ of assault in the first degree] while possessing a deadly weapon, also cannot stand" (People v Walker, 283 AD2d 912, 913 [4th Dept 2001]).
Because the evidence is legally sufficient to establish defendant's guilt with respect to the murder and criminal possession of a weapon counts, however, we reject defendant's contention that the court erred in denying his motion pursuant to CPL 330.30 (1) to set aside those parts of the verdict convicting defendant of those counts. Defendant's contentions concerning the denial of those parts of the motion directed toward the assault in the first degree and criminal use of a firearm in the first degree counts are academic in light of our determination concerning the sufficiency of the evidence with respect to those charges.
Defendant further contends that the verdict is contrary to the weight of the evidence. Viewing the evidence in light of the elements of the murder in the second degree and criminal possession of a weapon in the second degree counts as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence with respect to those two crimes (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). We further conclude that "the fact that certain of [the People's] witnesses had criminal histories, were incarcerated or seeking leniency does not render their testimony incredible as a matter of law but, rather, raises an issue of credibility for the factfinder to resolve" (People v Portee, 56 AD3d 947, 949 [3d Dept 2008], lv denied 12 NY3d 820 [2009]; see generally People v Hodge, 147 AD3d 1502, 1503 [4th Dept 2017], lv denied 29 NY3d 1032 [2017]). Defendant's remaining contentions concerning the weight of the evidence are based on "inconsequential discrepancies in the eyewitnesses' testimony [that] merely created a credibility contest that the jury reasonably and justifiably resolved in the People's favor" (People v Graves, 163 AD3d 16, 23 [4th Dept 2018]).
Contrary to defendant's contention, the court did not abuse its discretion in its evidentiary rulings. First, we reject defendant's contention that the court abused its discretion in admitting certain autopsy photographs. It is well settled that such photographs should be excluded " only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant' " (People v Wood, 79 NY2d 958, 960 [1992], quoting People v Pobliner, 32 NY2d 356, 370 [1973], rearg denied 33 NY2d 657 [1973], cert denied 416 US 905 [1974]; see People v Hernandez, 79 AD3d 1683, 1684 [4th Dept 2010], lv denied 16 NY3d 895 [2011]), and the photographs at issue were relevant to help explain and corroborate the testimony of the Medical Examiner concerning the deceased victim's injuries and cause of death. Next, defendant failed to preserve his contention that the court erred in admitting evidence that, on a date different than the date of these crimes, defendant possessed a .40 caliber weapon that was not used in these crimes (see People v Cromwell, 71 AD3d 414, 414 [1st Dept 2010], lv denied 15 NY3d 803 [2010]; People v Newton, 24 AD3d 1287, 1288-1289 [4th Dept 2005], lv denied 6 NY3d 836 [2006]). In any event, we reject that contention inasmuch as the evidence at trial circumstantially established that defendant possessed the .40 caliber weapon at the same time as he possessed the .45 caliber weapon that was used in these crimes, and thus we conclude that defendant's possession of the .40 caliber weapon was " inextricably interwoven with the charged crimes, provided necessary background information, and completed the narrative of [a key prosecution] witness[ ]' " (People v Strong, 165 AD3d 1589, 1590 [4th Dept 2018], lv denied 32 NY3d 1129 [2018]; see generally People v Moorer, 137 AD3d 1711, 1711-1712 [4th Dept 2016], lv denied 27 NY3d 1136 [2016]).
With respect to defendant's remaining challenge to the court's evidentiary rulings, the court did not abuse its discretion in admitting into evidence a recording of a 911 call made during this incident, in which the deceased victim's labored breathing is heard. The recording was relevant to corroborate certain testimony, and it was not so inflammatory that its prejudicial effect exceeded its probative value (see People v Harris, 99 AD3d 608, 608-609 [1st Dept 2012], lv denied 21 NY3d 1004 [2013]). Moreover, we conclude that any error in admitting the challenged items in evidence is harmless inasmuch as the "proof of [defendant's] guilt was overwhelming . . . and . . . there was no significant probability that the jury would have acquitted [*4][him] had the proscribed evidence not been introduced" (People v Kello, 96 NY2d 740, 744 [2001]; see People v Spencer, 96 AD3d 1552, 1553 [4th Dept 2012], lv denied 19 NY3d 1029 [2012], reconsideration denied 20 NY3d 989 [2012]).
Contrary to defendant's further contention, the court properly denied his repeated severance motions, inasmuch as defendant failed to demonstrate the requisite good cause for a discretionary severance (see CPL 200.40 [1]; People v Mahboubian, 74 NY2d 174, 183 [1989]; cf. People v McGuire, 148 AD3d 1578, 1579 [4th Dept 2017]). Where counts are properly joined pursuant to CPL 200.40 (1), a defendant may nevertheless seek severance for " good cause shown' " (Mahboubian, 74 NY2d at 183). "Good cause . . . includes, but is not limited to, a finding that a defendant will be unduly prejudiced by a joint
trial' " (id., quoting CPL 200.40 [1]). "Upon such a finding of prejudice, the court may order counts to be tried separately, grant a severance of defendants or provide whatever other relief justice requires" (CPL 200.40 [1]). Where, as here, "the same evidence is used to prove the charges against each defendant, a joint trial is preferred and severance will . . . be granted [only] for the most cogent reasons" (People v Dickson, 21 AD3d 646, 647 [3d Dept 2005]; see CPL 200.40 [1]; People v Bornholdt, 33 NY2d 75, 87 [1973], cert denied 416 US 905 [1974]). We conclude that the court did not abuse its discretion in denying defendant's motions inasmuch as "[t]he evidence against defendant and his codefendant[] was essentially identical, and the respective defenses were not in irreconcilable conflict" (People v Buccina, 62 AD3d 1252, 1253 [4th Dept 2009], lv denied 12 NY3d 913 [2009]; see People v Lukens, 107 AD3d 1406, 1408 [4th Dept 2013], lv denied 22 NY3d 957 [2013]). Contrary to defendant's contention, the recorded statement of the codefendant that was introduced at trial does not incriminate defendant, and thus does not implicate Bruton v United States (391 US 123 [1968]).
Defendant failed to preserve for our review his contention that the court erred in permitting the People to use a peremptory challenge based on the age of a prospective juror. Defendant did not object to the challenge on that ground at trial (see People v Neil, 213 AD2d 1014, 1014 [4th Dept 1995], lv denied 86 NY2d 783 [1995]). In any event, with respect to that contention and defendant's preserved contention that the court erred in denying his Batson challenge to that juror and another African-American prospective juror on the basis of race (see Batson v Kentucky, 476 US 79, 94-98 [1986]), the prosecutor offered legitimate, nonpretextual reasons for exercising peremptory challenges with respect to those prospective jurors (see People v English, 119 AD3d 706, 706 [2d Dept 2014], lv denied 24 NY3d 1043 [2014]; see generally People v Smocum, 99 NY2d 418, 423 [2003]).
All concur except Curran, J., who dissents and votes to affirm in the following memorandum: I respectfully dissent in part. I disagree with the majority to the extent it reverses those parts of the judgment convicting defendant of assault in the first degree and criminal use of a firearm in the first degree because they were not supported by legally sufficient evidence. Initially, I note that defendant conceded at oral argument that, in his brief, he did not make the argument relied on by the majority. Specifically, the majority bases its conclusion that the evidence with respect to those counts was insufficient on the purportedly erroneous jury instructions on the two counts of assault in the first degree (Penal Law § 120.10 [1]; see generally People v Prindle, 16 NY3d 768, 770 [2011]; People v Sala, 95 NY2d 254, 260 [2000]). I would not reach that issue and would affirm the judgment.
Moreover, even if that issue was properly before us, in my view, County Court's jury instruction with respect to assault in the first degree cannot be held to be erroneous. Importantly, I note that this Court has previously approved a nearly identical jury charge in a case involving very similar facts in People v Jacobs (52 AD3d 1182, 1184 [4th Dept 2008], lv denied 11 NY3d 926 [2009]). There, as here, the court instructed the jury on the assault charge directly from the pattern Criminal Jury Instructions (CJI) with respect to transferred intent and identified the unintended victim of the assault as the object of the intended assault. We concluded that "the court's final charge on that count, to which there was no objection by defendant, adequately set forth the elements of that crime, and there is legally sufficient evidence of the elements of that crime as those elements were charged to the jury without exception' " (id., quoting People v Dekle, 56 NY2d 835, 837 [1982]).
The distinction the majority attempts to draw between this case and Jacobs is untenable. As the majority concedes, there, as here, the court listed the unintended victim as the object of the [*5]assault—not the intended victim. The majority seemingly concludes that the sequence of when the jury heard the definition of transferred intent is the crux of the distinction between this case and Jacobs—a distinction that makes no substantive difference in my view. Instead, the majority's approach in modifying the judgment here based on a substantially similar jury charge to the one in Jacobs amounts to a sub silentio disavowal of the latter case.
The majority's approach also places into question the validity of the relevant CJI charge. Here, the court charged the jury directly from the CJI with respect to transferred intent and the identification of the unintended victim in the context of assault in the first degree (see CJI2d[NY] Penal Law § 120.10 [1] [last rev April 2018]). Specifically, as the CJI directs, the court instructed the jury that the definition of "intent" included the concept of "transferred intent." After providing a definition of terms, as directed by the CJI, the court stated the specific elements of assault in the first degree under Penal Law § 120.10 (1)—once again, as the CJI specifically directs. It followed the CJI's directions to instruct the jury that to find defendant guilty it had to find that: (1) defendant "caused serious physical injury to (specify);" and (2) "defendant did so with the intent to cause serious physical injury to (specify)" (CJI2d[NY] Penal Law § 120.10 [1]). Inasmuch as the serious physical injury was alleged to have been caused to victims who were not the target of the shooting, the court complied with the CJI by inserting their names as the actual assault victims for the respective counts.
There is no indication in the relevant CJI charge, however, that, in cases involving transferred intent, the court must also charge the jury that the defendant intended to cause serious physical injury to anyone other than the actual victim of the alleged assault. Rather, the concept of transferred intent is dealt with earlier in the CJI charge in the context of defining "intent" for purposes of the crimes charged. The CJI contains no directive that, in transferred intent cases, the charge must be further modified with respect to the element of intent by specifying anyone other than the actual victim of the assault. Inasmuch as the same situation occurred in Jacobs—the unintended victim was identified in both places where "(specify)" appears—the majority's conclusion that there was error here in this regard is contrary to that precedent. In short, the court followed the instructions of the CJI's charge to the letter. The majority's conclusion that the court would have complied with the CJI had it listed the name of the intended victim is certainly best practices, but I cannot conclude that the failure to do so is erroneous under our precedent.
The necessary implication of the majority's conclusion with respect to the court's jury charge on assault in the first degree is that the CJI, at a minimum, requires clarification in transferred intent cases that the present text of the pattern charge does not contain. Any future implications that necessarily flow from the majority's implicit conclusion concerning the inaccuracy of the CJI will need to be evaluated in future cases as they arise.
Absent an express disavowal of Jacobs, I conclude we are bound by the precedent set by that case to conclude that the charge here was not erroneous, and that the convictions of assault in the first degree and criminal use of a firearm in the first degree are supported by legally sufficient evidence.
Entered: March 13, 2020
Mark W. Bennett
Clerk of the Court