People v Ramos (2023 NY Slip Op 03755)

People v Ramos

2023 NY Slip Op 03755

Decided on July 6, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 6, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, OGDEN, AND GREENWOOD, JJ.

549 KA 20-00081

[*1]The People of the State of New York, RESPONDENT,
v
Gregory Ramos, DEFENDANT-APPELLANT. 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (SUSAN HUTCHISON OF COUNSEL), FOR DEFENDANT-APPELLANT.
GREGORY RAMOS, DEFENDANT-APPELLANT PRO SE.
JOHN J. FLYNN, DISTRICT ATTORNEY, BUFFALO (MICHAEL J. HILLERY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered July 17, 2018. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the facts, the indictment is dismissed, and the matter is remitted to Supreme Court, Erie County, for proceedings pursuant to CPL 470.45.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of murder in the second degree (Penal Law
§ 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]). Defendant's conviction is based on a theory of accessorial liability and arises from his alleged involvement in a fatal shooting at a bar. We previously affirmed the conviction of the codefendant, who was the actual shooter, on the appeal following his separate trial (People v Suarez, 175 AD3d 1036, 1037 [4th Dept 2019], lv denied 34 NY3d 1082 [2019]). On this appeal, defendant contends in his main brief, among other things, that the evidence is legally insufficient to support the conviction and that the verdict is against the weight of the evidence. We agree with defendant that the verdict is against the weight of the evidence and therefore reverse the judgment and dismiss the indictment.
A person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person" (Penal Law § 125.25 [1]). Further, a person is guilty of criminal possession of a weapon in the second degree, as relevant here, when "such person possesses any loaded firearm . . . [outside] such person's home or place of business"
(§ 265.03 [3]). A person is criminally liable for the conduct of another that constitutes an offense "when, acting with the mental culpability required for the commission thereof, [they] solicit[], request[], command[], importune[], or intentionally aid[] such person to engage in such conduct" (§ 20.00 [emphasis added]; see People v Spencer, 181 AD3d 1257, 1258 [4th Dept 2020], lv denied 35 NY3d 1029 [2020]).
The People presented evidence at trial that defendant was best friends with the codefendant and that defendant owned a white sedan in which he and the codefendant were seen shortly before the shooting. The crux of the People's case consisted of video evidence collected from surveillance cameras in the bar and the surrounding area. Footage from one camera showed a white sedan arriving at a corner one block north and west of the bar and then parking outside of the camera's view. Additional video footage followed the path of the shooter, identified by a witness as the codefendant, as he walked from a location near where the white sedan had parked, [*2]and then proceeded to walk a block south toward the bar and then enter the bar. Video footage from after the shooting followed the codefendant as he proceeded approximately one block west and north toward the location where the white sedan had parked. The white car is then almost immediately seen on footage from the first camera leaving the side street where it had been parked. The gun used by the codefendant, which video surveillance from inside the bar reveals to be relatively small, was never recovered. There is no video surveillance of the codefendant entering or exiting the white sedan, which was parked, either by plan or happenstance, on a part of the side street with no video surveillance, and the video of the white sedan itself is pixelated to an extent that precludes a conclusive identification of the vehicle as belonging to defendant. The People also offered evidence that, several days after the shooting, defendant fled from police officers, resulting in a high speed car chase and defendant's arrest.
As we previously held in People v McDonald, a case involving very similar facts, a " 'defendant's presence at the scene of the crime, alone, is insufficient for a finding of criminal liability' " (172 AD3d 1900, 1902 [4th Dept 2019], quoting People v Cabey, 85 NY2d 417, 421 [1995]). "Indeed, evidence that a defendant was at the crime scene and even assisted the perpetrator in removing evidence of that crime is insufficient to support a defendant's conviction where the People fail to offer evidence from which the jury could rationally exclude the possibility that the defendant was without knowledge of the perpetrator's intent" (id.; see People v La Belle, 18 NY2d 405, 411-412 [1966]). The above evidence, without more, establishes only that "defendant may have dropped off the codefendant [near] the bar prior to the shooting," which is "plainly insufficient to establish that defendant was aware of and shared the codefendant's intent to kill the victim" (McDonald, 172 AD3d at 1903).
The present case nonetheless materially differs from McDonald in that, here, the People also presented the testimony of a jailhouse informant who testified that defendant confessed to him that he planned and participated in the shooting with the codefendant for the purpose of seeking retribution for the victim's purported cooperation with law enforcement. Thus, "viewing the facts in a light most favorable to the People, 'there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime[s] proved beyond a reasonable doubt' " (People v Danielson, 9 NY3d 342, 349 [2007]), including defendant's shared intent to cause the death of another person (see Penal Law § 125.25 [1]; Spencer, 181 AD3d at 1258) and his knowledge that the codefendant was armed at the time defendant transported him to a location near the bar (see § 265.03 [3]; People v Hawkins, 192 AD3d 1637, 1640 [4th Dept 2021]).
Our conclusion that there is legally sufficient evidence to support the conviction, however, does not end our inquiry. We have both the power to review the factual findings of the jury and the obligation to do so where, as here, the defendant so requests (see Danielson, 9 NY3d at 348; see also CPL 470.15 [5]). Our "unique factual review power is the linchpin of our constitutional and statutory design" (People v Bleakley, 69 NY2d 490, 494 [1987]), and is intended to afford every defendant at least one appellate review of the facts (see People v Kuzdzal, 31 NY3d 478, 486 [2018]; Danielson, 9 NY3d at 348; People v Miller, 191 AD3d 111, 115 [4th Dept 2020]). In conducting our weight of the evidence review here, we conclude, initially, that an acquittal would not have been unreasonable inasmuch as the jury could have chosen not to credit the testimony of the jailhouse informant (see generally Bleakley, 69 NY2d at 495). We therefore "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (id.; see Danielson, 9 NY3d at 348). Here, the informant testified that, approximately five months after the shooting, defendant approached him in the Erie County Holding Center where both were being held on pending charges. Defendant, according to the informant, approached him to ask what people were saying about the shooting and to seek help obtaining an attorney through a mutual acquaintance. When asked whether defendant had discussed his role, if any, in the shooting, the informant testified that defendant admitted to dropping the codefendant off before the shooting and then picking him up after the crime had occurred. Defendant told the informant that the codefendant had deviated from the agreed-upon plan, causing defendant to have to pick the codefendant up at a business that, according to the evidence in the record, is approximately six to eight blocks north of the bar where the shooting occurred, on a busy thoroughfare populated by businesses.
Upon our review of the evidence in our role "as a second jury" (People v Delamota, 18 [*3]NY3d 107, 117 [2011]), we find that the version of events that the informant attributed to defendant is completely at odds with the video evidence establishing that the codefendant took an efficient, one-block circuitous route from the side street where the white sedan parked to the bar and then back to the sedan. The timing of events as established by the video evidence is too tight to permit any potential diversions or alternate routes to have been taken by the codefendant, much less the irrational choice of running along a busy thoroughfare several blocks away from the white sedan. Further, the informant's testimony is too specific to permit the conclusion that any inconsistency between it and the video evidence is the innocuous result of an imprecise account. We therefore conclude that this is an appropriate case to substitute our own credibility determination for that made by the jury and find that the informant's testimony is not credible (see id. at 116-117). Absent the informant's testimony, there is no evidence from which to reasonably infer that defendant shared the codefendant's intent to cause the death of another person (see Penal Law § 125.25 [1]; cf. Spencer, 181 AD3d at 1258) or that defendant knew that the codefendant was armed at the time defendant transported him to the bar (see § 265.03 [3]; Hawkins, 192 AD3d at 1640). In sum, we are simply not "convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt" (Delamota, 18 NY3d at 117). We therefore conclude that, viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), the verdict is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). In light of our determination, defendant's remaining contentions in his main and pro se supplemental briefs are academic.
Entered: July 6, 2023
Ann Dillon Flynn
Clerk of the Court