People v Brown (2025 NY Slip Op 04331)

People v Brown

2025 NY Slip Op 04331

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, SMITH, DELCONTE, AND HANNAH, JJ.

428 KA 23-01247

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ALTON D. BROWN, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
ANTHONY J. DIMARTINO, JR., DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Oswego County Court (Karen M. Brandt Brown, J.), rendered May 16, 2023. The judgment convicted defendant, upon a jury verdict, of murder in the second degree (three counts), assault in the first degree (three counts), attempted murder in the second degree, burglary in the first degree, attempted robbery in the first degree, attempted robbery in the second degree, criminal possession of a weapon in the second degree and conspiracy in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of two counts of felony murder in the second degree (Penal Law § 125.25 [3]), three counts of assault in the first degree (§ 120.10 [1], [4]), and one count each of intentional murder in the second degree (§ 125.25 [1]), attempted murder in the second degree (§§ 110.00, 125.25 [1]), burglary in the first degree (§ 140.30 [2]), attempted robbery in the first degree (§§ 110.00, 160.15 [1]), attempted robbery in the second degree (§§ 110.00, 160.10 [1]), criminal possession of a weapon in the second degree (§ 265.03 [3]), and conspiracy in the fourth degree (§ 105.10 [1]). Defendant's conviction stems from his participation in a home invasion robbery of a known drug dealer along with two codefendants, defendant's girlfriend (female codefendant) and friend (male codefendant). During the incident, the robbery victim (victim) was shot and wounded and another occupant of the home (decedent) was shot and killed. The evidence at trial did not identify who shot the victim or decedent.
Defendant failed to preserve for our review his contention that the People's supplemental certificates of compliance failed to detail the basis for the delayed disclosure as required by CPL 245.50 (1-a) (see CPL 470.05 [2]; People v Odusanya, 235 AD3d 1299, 1302 [4th Dept 2025], lv denied 43 NY3d 965 [2025]; People v Macaluso, 230 AD3d 1158, 1159 [2d Dept 2024], lv denied 42 NY3d 1036 [2024]).
Contrary to defendant's contention, we conclude that County Court did not err in refusing to suppress the statements defendant made to investigators and the tangible evidence arising from those statements. The court properly determined that defendant did not unequivocally invoke his right to remain silent when the investigators tried to steer the conversation away from plea negotiations relating to drugs found at the time of defendant's arrest, and defendant told the investigators that he was "ready" to go "downtown" and did not "want to talk no more" (see People v DuBois, 203 AD3d 1621, 1623 [4th Dept 2022], lv denied 38 NY3d 1032 [2022]; People v Lowin, 36 AD3d 1153, 1155 [3d Dept 2007], lv denied 9 NY3d 847 [2007], reconsideration denied 9 NY3d 878 [2007]). While "a suspect's right to remain silent, once invoked, must be scrupulously honored" (People v Ferro, 63 NY2d 316, 322 [1984], cert denied 472 US 1007 [1985] [internal quotation marks omitted]), the invocation of that right must be [*2]"unequivocal and unqualified" (People v Wiggins, 229 AD3d 1095, 1096 [4th Dept 2024] [internal quotation marks omitted]). Whether a defendant's statement constitutes an unequivocal assertion of the right to remain silent
" 'is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request[,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant' " (People v Zacher, 97 AD3d 1101, 1101 [4th Dept 2012], lv denied 20 NY3d 1015 [2013], quoting People v Glover, 87 NY2d 838, 839 [1995]). The court's determination that defendant did not unequivocally invoke his right to remain silent "is 'granted deference and will not be disturbed unless unsupported by the record' " (id.; see DuBois, 203 AD3d at 1623), particularly where, as here, defendant thereafter "continued to participate in the conversation with the police" (People v Trifunovski, 199 AD3d 1344, 1345 [4th Dept 2021], lv denied 38 NY3d 931 [2022]; see People v Johnston, 192 AD3d 1516, 1519 [4th Dept 2021], lv denied 37 NY3d 972 [2021]).
We reject defendant's contention that the court abused its discretion when it denied defendant's request for a missing witness charge for decedent's brother. A missing witness charge instructs a jury that it may "draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events" (People v Savinon, 100 NY2d 192, 196 [2003]), and is appropriate where: "[1] the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; [2] the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and [3] the witness is available to such party" (People v Gonzalez, 68 NY2d 424, 427 [1986]; see People v Smith, 33 NY3d 454, 458 [2019]; Savinon, 100 NY2d at 197). Here, the People established that the witness was unavailable because he was homeless and, despite reasonable efforts, they were not able to locate or contact him (see People v Barksdale, 216 AD3d 534, 534 [1st Dept 2023], lv denied 40 NY3d 949 [2023]; People v Lee, 303 AD2d 977, 977-978 [4th Dept 2003], lv denied 100 NY2d 540 [2003]; Matter of Mikal M., 191 AD2d 381, 382 [1st Dept 1993]).
We reject defendant's contention that he was denied effective assistance of counsel based on defense counsel's withdrawal of that part of defendant's omnibus motion seeking suppression of defendant's statements, failure to challenge the People's supplemental certificates of compliance, and failure to move for severance. With respect to the withdrawal of that part of the omnibus motion seeking suppression of his statements, although the initial motion was withdrawn, a separate motion seeking the same relief was subsequently made by defense counsel and ruled upon by the court and, thus, " 'inasmuch as defendant suffered no prejudice[,] there can be no finding of ineffectiveness' " (People v Rogers, 277 AD2d 876, 877 [4th Dept 2000], lv denied 96 NY2d 834 [2001]). With respect to the failure to object to the People's supplemental certificates of compliance, the contention is raised for the first time in defendant's reply brief and, thus, is not properly before us (see People v McMurtry, 224 AD3d 1310, 1310-1311 [4th Dept 2024], lv denied 41 NY3d 984 [2024]; see generally Solvay Bank v Feher Rubbish Removal, Inc., 187 AD3d 1596, 1597 [4th Dept 2020]). With respect to the failure to move for severance, defense counsel specifically stated that the decision not to make the motion was strategic, and we conclude that defendant has not established that counsel's strategy " 'was inconsistent with the actions of a reasonably competent attorney' " (People v Howie, 149 AD3d 1497, 1500 [4th Dept 2017], lv denied 29 NY3d 1128 [2017]; see People v Evans, 142 AD3d 1291, 1292 [4th Dept 2016], lv denied 28 NY3d 1144 [2017]). Additionally, inasmuch as the cases "were properly joined, [a]ny motion to sever . . . the indictment would have had little or no chance of success, and thus counsel's failure to make such a . . . motion . . . does not indicate ineffectiveness of counsel" (People v Weather, 182 AD3d 1043, 1044 [4th Dept 2020], lv denied 36 NY3d 932 [2020] [internal quotation marks omitted]).
Contrary to defendant's contention, the court properly admitted in evidence the text messages sent by the female codefendant to defendant's cell phone pursuant to the coconspirator exception to the hearsay rule. " 'A declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule' " (People v Caban, 5 NY3d 143, 148 [2005], quoting People v Bac Tran, 80 NY2d 170, 179 [1992], rearg denied 81 NY2d 784 [1993]). Such a declaration may be admitted only where the People have established a prima facie case of conspiracy " 'without recourse to the [*3]declarations [of that coconspirator]' " (id., quoting People v Salko, 47 NY2d 230, 238 [1979], rearg denied and remittitur amended 47 NY2d 1010 [1979]; see People v Tucker, 200 AD3d 1584, 1586 [4th Dept 2021], lv denied 38 NY3d 954 [2022]). "The prima facie case of conspiracy does not need to be established before the coconspirator's statements are admitted in evidence, so long as 'the People independently establish a conspiracy by the close of their case' " (Tucker, 200 AD3d at 1586, quoting Caban, 5 NY3d at 151).
Here, we conclude that, without recourse to the declarations in the text messages, the People established a prima facie case that defendant and his two codefendants conspired to commit a burglary and robbery on the night of the incident (see id.). A witness testified that, on the night of the incident, she drove defendant and the codefendants to a bar, at which point the female codefendant went inside alone while the two others waited for her. After a period of time, the female codefendant and the victim left the bar together to go to the victim's home. Defendant and the male codefendant followed the female codefendant and the victim to the victim's home, and then waited outside on the victim's porch while the female codefendant was inside. While they were waiting, defendant and the female codefendant used their cellular phones to call and send text messages to each other, as confirmed by phone records. At one point, defendant and the male codefendant forced their way into the victim's home, an overt act taken in furtherance of the conspiracy (see id. at 1587; see generally People v McGee, 49 NY2d 48, 57-58 [1979]). After defendant and the male codefendant entered the victim's home, they acted on the direction of the female codefendant to break down the door to the victim's room, where drugs were being stored, and all three subsequently left together in a vehicle waiting for them outside. Defendant later admitted during his statement to the police that the burglary and robbery had been set up by the female codefendant as "retaliation" for an ex-boyfriend getting her addicted to heroin.
Defendant further contends that the evidence is legally insufficient to support the conviction because the People failed to establish that he acted with the requisite intent for accomplice liability. We reject that contention (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). To determine legal sufficiency, we must review the evidence "in the light most favorable to the prosecution," affording "the People . . . all reasonable evidentiary inferences" (People v Delamota, 18 NY3d 107, 113 [2011]) to determine whether "there was a 'valid line of reasoning and permissible inferences that could lead a rational person to conclude that every element of the charged crime has been proven beyond a reasonable doubt' " (People v Pietrocarlo, 37 NY3d 1142, 1143 [2021]). Whether an accessory shares the intent of a principal actor may be established by circumstantial evidence (see People v Ozarowski, 38 NY2d 481, 489 [1976]; People v Zuhlke, 67 AD3d 1341, 1341 [4th Dept 2009], lv denied 14 NY3d 774 [2010]). The evidence at trial that decedent was killed and the victim suffered serious physical injury during the course of the burglary and robbery that defendant and his codefendants conspired to commit is legally sufficient to sustain the conviction of the crimes of two counts of murder in the second degree (Penal Law § 125.25 [3]), two counts of assault in the first degree (§ 120.10 [4]), and one count each of burglary in the first degree (§ 140.30 [2]), attempted robbery in the first degree (§§ 110.00, 160.15 [1]), attempted robbery in the second degree (§§ 110.00, 160.10 [1]), and conspiracy in the fourth degree (§ 105.10 [1]). Evidence that defendant was aware both that he was breaking into the home of a known drug dealer and that one of his codefendants possessed a handgun is legally sufficient to sustain the conviction of criminal possession of a weapon in the second degree (§ 265.03 [3]) inasmuch as " 'defendant's conduct showed that he was aware that his codefendant possessed a [gun]' and that he intentionally aided the [male] codefendant in that possession" (People v Johnson, 94 AD3d 1408, 1409 [4th Dept 2012], lv denied 19 NY3d 998 [2012]). Evidence that the victim knew the female codefendant and was aware of defendant, that defendant and his codefendants intended to steal drugs, that defendant was aware that one of his codefendants possessed a handgun, that defendant continued with the robbery after the victim and decedent were shot, and that defendant and his codefendants left together in a waiting vehicle is legally sufficient to establish defendant's shared intent to kill or inflict serious injury and thus sustain the conviction of murder in the second degree (§ 125.25 [1]), attempted murder in the second degree (§§ 110.00, 125.25 [1]), and assault in the first degree (§ 120.10 [1]) (see People v McGee, 87 AD3d 1400, 1401 [4th Dept 2011], affd 20 NY3d 513 [2013]; People v Lewis-Bush, 204 AD3d 1424, 1425 [4th Dept 2022], lv denied 38 NY3d 1072 [2022]; People v Harris, 195 AD3d 1535, 1536 [4th Dept 2021], lv denied 37 NY3d 1027 [*4][2021]; cf. People v McDonald, 172 AD3d 1900, 1902-1903 [4th Dept 2019]).
Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's further contention that the verdict is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
We further reject defendant's contention that he was denied a fair trial by, inter alia, comments by the prosecutor in the opening statement and the admission in evidence of autopsy photographs. The allegedly inflammatory portions of the prosecutor's opening statement were not improper inasmuch as the statements did not demean defendant's character but instead accurately described evidence that the prosecutor intended to present (see People v Celdo, 291 AD2d 357, 358 [1st Dept 2002], lv denied 98 NY2d 673 [2002]; People v Etoria, 266 AD2d 559, 559 [2d Dept 1999], lv denied 94 NY2d 919 [2000]; cf. People v Elmore, 175 AD3d 1003, 1005 [4th Dept 2019], lv denied 34 NY3d 1158 [2020]). Additionally, autopsy photographs "should be excluded only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant" (People v Spencer, 181 AD3d 1257, 1261 [4th Dept 2020], lv denied 35 NY3d 1029 [2020] [internal quotation marks omitted]) and, here, they were admitted "to help explain and corroborate" the testimony of the Medical Examiner concerning the deceased victim's injuries and cause of death (id.; see People v Stevens, 76 NY2d 833, 836 [1990]; People v Brooks, 214 AD3d 1425, 1427 [4th Dept 2023], lv denied 39 NY3d 1153 [2023]).
We conclude that defendant's sentence is not unduly harsh or severe.
Finally, we note that the certificate of disposition and uniform sentence and commitment form contain several errors that must be corrected (see People v Cutaia, 167 AD3d 1534, 1536 [4th Dept 2018], lv denied 33 NY3d 947 [2019]). Specifically, both the certificate of disposition and uniform sentence and commitment form incorrectly state that the conviction under count 5 of the indictment is for attempted murder in the second degree, rather than murder in the second degree (Penal Law § 125.25 [1]), and incorrectly state the sentences imposed on counts 3 and 4 are indeterminate terms of imprisonment of 25 years to life, rather than determinate terms of imprisonment of 25 years and with 5 years of postrelease supervision. Thus, the certificate of disposition and the uniform sentence and commitment form must be amended to reflect the correct crime and sentences under those counts of the indictment.
All concur except Whalen, P.J., and Smith, J., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part, inasmuch as we agree with defendant that his conviction is not supported by legally sufficient evidence with respect to the counts of intentional murder in the second degree (Penal Law § 125.25 [1]), attempted murder in the second degree (§§ 110.00, 125.25 [1]), and assault in the first degree (§ 120.10 [1]). As the majority notes, defendant's conviction for those counts, as well as, inter alia, burglary in the first degree (§ 140.30 [2]) and attempted robbery in the first degree (§§ 110.00, 160.15 [1]), stems from his participation in a home invasion robbery along with two codefendants, defendant's girlfriend (female codefendant) and friend (male codefendant). During the course of the home invasion, one victim was shot and killed and another victim was shot and wounded.
"A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks omitted]). Here, although the jurors were instructed that they could consider defendant's guilt either as the principal or as an accessory, there is no dispute that the People offered no evidence as to which perpetrator possessed the firearm or who actually shot either victim. Thus, there is no evidence from which to infer defendant's intent to cause either the death of or serious physical injury to another person (Penal Law §§ 120.10 [1]; 125.25 [1]) from "the natural and probable consequences of [defendant's own] acts" (People v Noonan, 202 AD3d 1469, 1470 [4th Dept 2022], lv denied 38 NY3d 1009 [2022] [internal quotation marks omitted]; see People v Hough, 151 AD3d 1591, 1593 [4th Dept 2017], lv denied 30 NY3d 950 [2017]).
The majority nonetheless concludes that there is legally sufficient evidence to establish defendant's guilt as an accessory to whomever shot the victims. Accessorial liability requires the People to prove beyond a reasonable doubt that defendant acted with the mental culpability necessary to commit the crime charged and that he solicited, requested, commanded, importuned, or intentionally aided such person to engage in such conduct (see Penal Law § 20.00; People v Maldonado, 189 AD3d 2083, 2084 [4th Dept 2020], lv denied 36 NY3d 1098 [2021]). Although we agree with the majority that there is legally sufficient evidence that defendant shared a community of purpose with his codefendants with respect to the burglary and attempted robbery (see §§ 140.30 [2]; 110.00, 160.15 [1]), we respectfully disagree that there is legally sufficient evidence to establish, without speculation, that defendant shared any intent to cause the death of or seriously injure another person. Contrary to the conclusion of the majority, there was no evidence that defendant knew on the day of the home invasion that one of his codefendants possessed a handgun. Although the People presented evidence that a photo of the firearm used in the home invasion was recovered from defendant's cell phone, the trial evidence also established that the photo was sent to defendant from an unknown person six to seven weeks before the home invasion occurred and no accompanying text message was recovered. No evidence was presented that defendant knew on the day of the home invasion that either codefendant was armed prior to the shooting (see People v Hawkins, 192 AD3d 1637, 1639 [4th Dept 2021]; cf. People v Ramos, 218 AD3d 1113, 1115 [4th Dept 2023]). None of the witnesses to the home invasion, including the witness who drove defendant and the male codefendant to the home, saw a firearm prior to the shooting. There is also no evidence of what actions defendant did or did not take inside the home after the shots were fired, which a witness testified occurred almost immediately upon defendant and the male codefendant entering the home, "from which the jury could rationally exclude the possibility that . . . defendant was without knowledge of the [shooter's] intent" to kill or seriously injure any person by the use of a firearm as alleged in the indictment (People v MacDonald, 172 AD3d 1900, 1902 [4th Dept 2019]; cf. People v Cabey, 85 NY2d 417, 421 [1995]).
We would therefore modify the judgment by reversing those parts convicting defendant of intentional murder in the second degree, attempted murder in the second degree, and assault in the first degree under counts 5, 6 and 7 of the indictment and dismissing those counts. We agree with the majority that the remainder of defendant's contentions do not warrant further modification or reversal of the judgment.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court