People v Scott (2025 NY Slip Op 07167)

People v Scott

2025 NY Slip Op 07167

Decided on December 23, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 23, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CURRAN, MONTOUR, SMITH, AND DELCONTE, JJ.

892 KA 24-00398

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RANDALL A. SCOTT, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (WILLIAM T. EASTON OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (MARTIN P. MCCARTHY, II, OF COUNSEL), FOR RESPONDENT.

 Appeal from a judgment of the Monroe County Court (Meredith A. Vacca, J.), rendered May 9, 2023. The judgment convicted defendant upon a jury verdict of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the indictment is dismissed, and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 470.45.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law §§ 20.00, 125.25 [1]). Defendant's conviction is based on a theory of accessorial liability and arises from his alleged involvement in the fatal shooting of the victim by the codefendant, who was tried separately and convicted. On appeal, defendant contends that the conviction is not supported by legally sufficient evidence and that the verdict is against the weight of the evidence. We agree, and we therefore reverse the judgment and dismiss the indictment.
"[E]ven in circumstantial evidence cases, the standard for appellate review of legal sufficiency issues is 'whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the fact finder on the basis of the evidence at trial, viewed in the light most favorable to the People' " (People v Hines, 97 NY2d 56, 62 [2001], rearg denied 97 NY2d 678 [2001]; see People v Rossey, 89 NY2d 970, 971-972 [1997]; People v Cabey, 85 NY2d 417, 420-421 [1995]). A person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, [they] cause[] the death of such person or of a third person" (Penal Law § 125.25 [1]). A person is criminally liable for the conduct of another that constitutes an offense "when, acting with the mental culpability required for the commission thereof, [they] solicit[ ], request[ ], command[ ], importune[ ], or intentionally aid[ ] such person to engage in such conduct" (§ 20.00; see People v Ramos, 218 AD3d 1113, 1113-1114 [4th Dept 2023]; People v McDonald, 172 AD3d 1900, 1901 [4th Dept 2019]). "Intent to kill may be inferred from defendant's conduct as well as the circumstances surrounding the crime" (People v Price, 35 AD3d 1230, 1231 [4th Dept 2006], lv denied 8 NY3d 926 [2007]; see McDonald, 172 AD3d at 1901-1902). A jury is also "entitled to infer that a defendant intended the natural and probable consequences of [the defendant's] acts" (People v Hough, 151 AD3d 1591, 1593 [4th Dept 2017], lv denied 30 NY3d 950 [2017] [internal quotation marks omitted]). Nonetheless, "[i]t is essential that the intent . . . to kill be fairly deducible from the proof and that the proof exclude any other purpose" (People v Monaco, 14 NY2d 43, 46 [1964]; see McDonald, 172 AD3d at 1902).
Here, because the codefendant was wearing a GPS-equipped ankle bracelet that [*2]constantly reported his location to the authorities, the People were able to establish the codefendant's whereabouts throughout the day in question and that it was the codefendant who shot and killed the victim. Viewing the evidence in the light most favorable to the People, we further conclude that the People established that defendant transported the codefendant to and from the scene of the victim's murder. Indeed, defendant admitted that much to the police, and video footage admitted in evidence at trial placed defendant's distinctive vehicle at various locations that corresponded with the codefendant's location on the day in question. Because there is no dispute that defendant did not shoot the victim, his guilt as an accessory depends entirely on whether his intent to commit the murder can be inferred from his actions as the codefendant's driver at the time in question.
Of course, "[a] defendant's presence at the scene of the crime, alone, is insufficient for a finding of criminal liability" (McDonald, 172 AD3d at 1902 [internal quotation marks omitted]; see Ramos, 218 AD3d at 1114; see generally Cabey, 85 NY2d at 421). Indeed, evidence that a defendant was at the crime scene and even assisted the perpetrator in removing evidence of that crime is insufficient to support a defendant's conviction where the People fail to offer evidence from which the jury could rationally exclude the possibility that the defendant was without knowledge of the perpetrator's intent (see People v La Belle, 18 NY2d 405, 411-412 [1966]; see also People v Robinson, 90 AD2d 249, 251 [4th Dept 1982], affd 60 NY2d 982 [1983]). "An aider and abettor must share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose" (La Belle, 18 NY2d at 412 [internal quotation marks omitted]). Here, we have no difficulty concluding, based on the video evidence showing defendant picking up the codefendant immediately after the shots were fired and speeding away from the scene, that there is a valid line of reasoning and permissible inferences by which the jury could have found that defendant intentionally aided the codefendant after the murder, but we cannot conclude that there is legally sufficient evidence to support the inference that defendant shared the codefendant's intent to kill the victim (see People v Eldridge, 302 AD2d 934, 935 [4th Dept 2003], lv denied 99 NY2d 654 [2003]; see generally Robinson, 90 AD2d at 251). Indeed, we note that none of the factors cited by the People in support of defendant's guilt as an accessory—even the codefendant's use of a disguise when exiting defendant's vehicle and defendant's suspicious movement of his vehicle to facilitate quicker escape—is inconsistent with a scenario in which the codefendant intended to rob the victim, or even a scenario in which defendant truly had no idea that the codefendant was armed and intended to shoot and kill the victim (see Ramos, 218 AD3d at 1114). Further, there was no evidence at trial establishing that defendant and the codefendant had any conversations pertaining to the shooting of the victim; indeed, there is hardly any evidence establishing that defendant and the codefendant had much, if any interaction with each other before the day of the murder. Consequently, we conclude that the evidence was insufficient to establish that defendant was aware of, and shared, the codefendant's intent to kill the victim (see McDonald, 172 AD3d at 1903).
Even assuming, arguendo, that the evidence is legally sufficient to support the conviction, we further conclude that, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). As previously noted, "a defendant's presence at the scene of the crime, alone, is insufficient for a finding of criminal liability" (Ramos, 218 AD3d at 1114 [internal quotation marks omitted]). Moreover, the People failed to prove beyond a reasonable doubt that defendant "shared the codefendant's intent to kill" (McDonald, 172 AD3d at 1904; see generally People v Hawkins, 192 AD3d 1637, 1640 [4th Dept 2021]), particularly given the lack of evidence that defendant "knew that the codefendant was armed at the time defendant transported him" or knew that the codefendant planned to shoot and kill the victim at that time (Ramos, 218 AD3d at 1116). In sum, even if the evidence is legally sufficient, we are simply not "convinced that the jury was justified in finding that [defendant's] guilt [as an accessory] was proven beyond a reasonable doubt" (People v Delamota, 18 NY3d 107, 117 [2011]).
In light of our determination, we do not address defendant's remaining contentions.
Entered: December 23, 2025
Ann Dillon Flynn
Clerk of the Court